**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ESMERALDA LARIOS ALVARADO, individually and as successor in interest to ALEXANDER AGUILAR-LARIOS, deceased,

|   Plaintiff,

vs.

CITY OF LOS ANGELES; DANIEL RAMIREZ; JIM MCDONNELL; MATTHEW BARRAGAN; FLORENCE YU; ERROLL SOUTHERS; FABIAN GARCIA; MARIA CALANCHE; RASHA SHIELDS; and DOES 1-10, inclusive,

|   Defendants.

Case No.: 2:25-cv-07136

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1. Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)
2. Denial of Familial Relationship – Substantive Due Process, Fourteenth Amendment (42 U.S.C. § 1983)
3. Municipal Liability – Ratification (42 U.S.C. § 1983)
4. Municipal Liability – Inadequate Training (42 U.S.C. § 1983)
5. Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)
6. Battery (Wrongful Death/Survival)
7. Negligence (Wrongful Death/Survival)
8. Bane Act (Cal. Civil Code 52.1)

**DEMAND FOR JURY TRIAL**

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff ESMERALDA LARIOS ALVARADO, individually and as successor in interest to ALEXANDER AGUILAR-LARIOS, deceased, for her Complaint against Defendants CITY OF LOS ANGELES; DANIEL RAMIREZ; JIM MCDONNELL; MATTHEW BARRAGAN; FLORENCE YU; ERROLL SOUTHERS; FABIAN GARCIA; MARIA CALANCHE; RASHA SHIELDS; and DOES 1-10, inclusive, and allege as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States, including 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

2.      This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred within this district.

4.      On or around November 25, 2024, Plaintiff served her comprehensive and timely claim for damages with the CITY OF LOS ANGELES pursuant to applicable sections of the California Government Code. On February 7, 2025, the CITY OF LOF ANGELES rejected Plaintiff's claim.

**INTRODUCTION**

5.      This civil rights and state tort action arises out of the June 11, 2024, use of excessive and unreasonable force, including deadly force, on

1  Decedent ALEXANDER AGUILAR-LARIOS by Defendant Officer DANIEL

2  RAMIREZ. Plaintiff, the natural mother of Decedent, seeks compensatory

3  damages, punitive damages, attorneys' fees, and costs from Defendants for

4  violating various rights guaranteed to Plaintiff by the Bill of Rights, the United

5  States Constitution, the California Constitution, and the laws of the State of

6  California.

7        6.      Defendants DANIEL RAMIREZ; JIM MCDONNELL;

8  MATTHEW BARRAGAN; FLORENCE YU; ERROLL SOUTHERS; FABIAN

9  GARCIA; MARIA CALANCHE; RASHA SHIELDS; and DOES 1-10,

10  inclusive, caused various injuries by directly shooting Decedent, who was not

11  an immediate threat of death or serious bodily injury as described herein (i.e.,

12  Defendant RAMIREZ), and/or by integrally participating or failing to

13  intervene in the use of excessive and unreasonable force used against Decedent

14  (i.e., Defendant DOES 1-10), or by failing to adequately supervise, ratifying,

15  failing to train, or maintaining unconstitutional customs, practices and policies

16  as described herein (i.e., Defendants MCDONNELL; BARRAGAN; YU;

17  SOUTHERS; GARCIA; CALANCHE; and SHIELDS).

18        7.      This action is in the public interest as Plaintiff seeks by means of

19  this action to hold accountable those responsible for the shooting, and serious

20  bodily injury inflicted by Defendants.

21

22                              **PARTIES**

23        8.      At all relevant times, Decedent ALEXANDER AGUILAR-

24  LARIOS ("Decedent" and/or "LARIOS") is and was an individual residing in

25  the County of Los Angeles, California.

26        9.      Plaintiff ESMERALDA LARIOS ALVARADO ("Plaintiff" and/or

27  "ALVARADO") is the natural mother of Decedent and sues both in an

28  individual capacity as the mother of Decedent and in a representative capacity

as a successor in interest to Decedent pursuant to California Code of Civil Procedure § 377.30. Plaintiff seeks survival damages, wrongful death damages, and punitive damages under federal and state law.

10.     At all relevant times, Defendant CITY OF LOS ANGELES ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles Police Department ("LAPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the LAPD and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, CITY was the employer of Defendant Officer DANIEL RAMIREZ, and DOES 1-10, inclusive. As set forth below, Plaintiff alleges that Defendant CITY is directly liable for compensatory damages under federal law pursuant to *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) and its progeny. Plaintiff further alleges that Defendant CITY is vicariously liable for compensatory damages under Plaintiff's state law claims, given Plaintiff's allegations that the officers who committed the acts and omissions complained of herein were acting in the course and scope of their employment at the time that the acts and omissions occurred. Plaintiff makes no claim for punitive damages against the Defendant CITY.

11.     Under the CITY Charter, the Board of Police Commissioners ("BOPC") is the head of the Police Department. The BOPC sets overall policy while the Chief of Police manages the daily operations of the LAPD and implements the BOPC's policies or policy direction and goals. The BOPC members are appointed by the Mayor of Los Angeles and confirmed by the

City Council. The Office of the Inspector General's ("OIG") role within the CITY is to support the BOPC and the public by providing information and analysis regarding the conduct and performance of the LAPD. The OIG functions as the "eyes and ears" of the BOPC, which is responsible for overseeing the LAPD. The Commissioners' responsibility is to the community at large, and their priorities should include implementing recommended reforms, improving service to the public by the LAPD, reducing crime and the fear of crime, and initiating, implementing and supporting community policing programs.

12.    At all relevant times, Defendant DANIEL RAMIREZ ("RAMIREZ") was a duly appointed CITY Officer and/or employee or agent of CITY, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant RAMIREZ acted under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the LAPD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant RAMIREZ acted within the course and scope of his employment as a CITY police officer. On information and belief, Defendant RAMIREZ is and was at all relevant times a resident of this judicial district. Defendant RAMIREZ used excessive and unreasonable deadly force against Decedent LARIOS.

13.    At all relevant times, Defendant Chief of Police JIM MCDONNELL ("MCDONNELL") was a duly appointed CITY employee and agent, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant MCDONNELL acted under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the LAPD, and under the color of the statutes and regulations of the State of California. At all relevant

times, Defendant MCDONNELL acted within the course and scope of his employment as Chief of Police for CITY. On information and belief, Defendant MCDONNELL is and was at all relevant times a resident of this judicial district. Defendant MCDONNELL ratified this use of excessive and unreasonable force, failed to properly train and discipline officers under his charge, and maintained unconstitutional policies, all of which substantially contributed to the use of excessive and unreasonable force alleged herein.

14. At all relevant times, Defendant Inspector General MATTHEW BARRAGAN ("BARRAGAN") was a duly appointed CITY employee and agent, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant BARRAGAN acted under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the LAPD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant BARRAGAN acted within the course and scope of his employment as a CITY Acting Inspector General. On information and belief, Defendant BARRAGAN is and was at all relevant times a resident of this judicial district. Defendant BARRAGAN ratified this use of excessive and unreasonable force, failed to properly train and discipline officers under her charge, and maintained unconstitutional policies, all of which substantially contributed to the use of excessive and unreasonable force alleged herein.

15. At all relevant times, Defendant Acting Inspector General FLORENCE YU ("YU") was a duly appointed CITY employee and agent, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant YU acted under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the LAPD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant YU

acted within the course and scope of her employment as Acting Inspector General for CITY. On information and belief, Defendant YU is and was at all relevant times a resident of this judicial district. Defendant YU ratified this use of excessive and unreasonable force, failed to properly train and discipline officers under her charge, and maintained unconstitutional policies all of which substantially contributed to the use of excessive and unreasonable force alleged herein.

16.     At all relevant times, Defendant BOPC President Dr. ERROLL SOUTHERS ("SOUTHERS") was a duly appointed CITY employee and agent, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant SOUTHERS acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the LAPD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant SOUTHERS acted within the course and scope of his employment as a Commissioner with the BOPC. On information and belief, Defendant SOUTHERS is and was at all relevant times a resident of this judicial district. Defendant SOUTHERS ratified this use of excessive and unreasonable force, failed to properly train and discipline officers under his charge, and maintained unconstitutional policies all of which substantially contributed to the use of excessive and unreasonable force alleged herein.

17.     At all relevant times, Defendant BOPC Commissioner FABIAN GARCIA ("GARCIA") was a duly appointed CITY employee and agent, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant GARCIA acted under the color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the LAPD, and under the color of the statutes and regulations of the State of California. At all relevant times,

1   Defendant GARCIA acted within the course and scope of his employment as a

2   Commissioner with the BOPC. On information and belief, Defendant GARCIA

3   is and was at all relevant times a resident of this judicial district. Defendant

4   GARCIA ratified this use of excessive and unreasonable force, failed to

5   properly train and discipline officers under his charge, and maintained

6   unconstitutional policies, all of which substantially contributed to the use of

7   excessive and unreasonable force alleged herein.

8       18.    At all relevant times, Defendant BOPC Commissioner MARIA

9   CALANCHE ("CALANCHE") was a duly appointed CITY employee and

10  agent, subject to the oversight and supervision of CITY'S elected and non-

11  elected officials. At all relevant times, Defendant CALANCHE acted under the

12  color of law, to wit, under the color of the statutes, ordinances, regulations,

13  policies, customs, and usages of Defendant CITY, the LAPD, and under the

14  color of the statutes and regulations of the State of California. At all relevant

15  times, Defendant CALANCHE acted within the course and scope of his

16  employment as a CITY BOPC Commissioner. On information and belief,

17  Defendant CALANCHE is and was at all relevant times a resident of this

18  judicial district. Defendant CALANCHE ratified this use of excessive and

19  unreasonable force, failed to properly train and discipline officers under his

20  charge, and maintained unconstitutional policies, all of which substantially

21  contributed to the use of excessive and unreasonable force alleged herein.

22      19.    At all relevant times, Defendant BOPC Commissioner RASHA

23  SHIELDS ("SHIELDS") was a duly appointed CITY employee and agent,

24  subject to the oversight and supervision of CITY'S elected and non-elected

25  officials. At all relevant times, Defendant SHIELDS acted under color of law,

26  to wit, under the color of the statutes, ordinances, regulations, policies,

27  customs, and usages of Defendant CITY, the LAPD, and under the color of the

28  statutes and regulations of the State of California. At all relevant times,

1  Defendant SHIELDS acted within the course and scope of his employment as a

2  Commissioner with the BOPC. On information and belief, Defendant

3  SHIELDS is and was at all relevant times a resident of this judicial district.

4  Defendant SHIELDS ratified this use of excessive and unreasonable force,

5  failed to properly train and discipline officers under his charge, and maintained

6  unconstitutional policies, all of which substantially contributed to the use of

7  excessive and unreasonable force alleged herein.

8       20.    At all relevant times, Defendants DOES 1-6 ("DOE OFFICERS")

9  were Officers for the LAPD, including but not limited to patrol officers, crisis

10  negotiations officers, corporals, sergeants, field training officers, dispatchers,

11  and other officers and agents of LAPD. DOE OFFICERS were acting under the

12  color of law within the course and scope of their duties as officers for the

13  LAPD. DOE OFFICERS were acting with complete authority and ratification

14  of their principal, Defendant CITY.

15       21.    Defendants DOES 7-10 ("DOE SUPERVISORS") are supervisory

16  officers, officials, agents, and/or employees for the LAPD who were acting

17  under color of law within the course and scope of their duties as officials for

18  the LAPD. DOE SUPERVISORS were acting with complete authority and

19  ratification of their principal, Defendant CITY. Defendants DOE

20  SUPERVISORS are managerial, supervisorial, and policymaking employees of

21  the LAPD, who were acting under color of law within the course and scope of

22  their duties as managerial, supervisorial, and policymaking employees for the

23  LAPD. DOE SUPERVISORS were acting with complete authority and

24  ratification of their principal, Defendant CITY.

25       22.    The true names and capacities, whether individual, corporate,

26  association or otherwise of Defendants DOES 1-10, inclusive, are unknown to

27  Plaintiff, who otherwise sues these Defendants by such fictitious names.

28  Plaintiff will seek leave to amend this complaint to show the true names and

capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

23.    At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

24.    All the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Also, Defendants and their agents ratified all the acts complained herein.

25.    All Defendants who are natural persons, including Defendants RAMIREZ; MCDONNELL; BARRAGAN; YU; SOUTHERS; GARCIA; CALANCHE; SHIELDS, and DOES 1-10, inclusive, are sued in their individual capacity, and punitive damages are only being requested as to these Defendants only, and not Defendants CITY.

26.    Pursuant to Cal. Govt. Code §815.2(a), Defendant CITY is vicariously liable for the nonfeasance and malfeasance of the individual Defendants, including Defendants RAMIREZ; MCDONNELL; BARRAGAN; YU; SOUTHERS; GARCIA; CALANCHE; SHIELDS, and DOES 1-10, inclusive, as alleged by Plaintiff's state law claims. ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). The individual Defendants, including Defendants RAMIREZ; MCDONNELL; BARRAGAN; YU; SOUTHERS; GARCIA; CALANCHE; SHIELDS, and DOES 1-10, inclusive,

are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code §820(a). Defendant CITY is also liable pursuant to Cal. Govt. Code §815.6.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

27.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 26 of this Complaint with the same force and effect as if fully set forth herein.

28.    On June 11, 2024, at approximately 8:50 p.m., at or around the 10800 block of Lehigh Avenue, Pacoima, CA 91331 California, County of Los Angeles, Defendant RAMIREZ used excessive and unreasonable force, including deadly force, against Decedent LARIOS and employed negligent tactics, including his individual and collective pre-shooting conduct and tactics, which includes Defendants DOE OFFICERS, and when Defendant RAMIREZ shot Decedent including to the back.

29.    On information and belief, Defendants RAMIREZ and DOE OFFICERS were not responding to a serious or violent crime, the Defendants did not have any information that Decedent had just committed or was about to commit a serious or violent crime and had no information that Decedent had just harmed or was threatening to harm any person or law enforcement officer.

30.    Defendants RAMIREZ and DOE OFFICERS were pursuing Decedent on foot without any information that any third parties were endangered by Decedent's conduct. At all relevant times, Decedent's back was to Defendants.

31.    Upon information and belief, the Defendant Officers, and each of them, had time to assess the situation, plan, contain Plaintiff, and safely take him into custody. Instead, the Defendant Officers failed to utilize the time they had, failed to adequately formulate and implement a plan, and failed to de-escalate the situation leading to their use of excessive and unreasonable force.

32.    Upon information and belief, at all relevant times, Decedent LARIOS was not an immediate threat of death or serious bodily injury to any person or officer at the time of the use of excessive and unreasonable force.

33.    The use of deadly force against Decedent LARIOS by Defendant RAMIREZ was excessive and unreasonable because immediately prior to and at the time of the use of deadly force: Decedent was not an immediate threat of death or serious bodily injury to any person; Decedent was not given a verbal warning that deadly force was going to be used, despite it being feasible to do so; and Defendant RAMIREZ had reasonable, less-intrusive alternatives to the use of deadly force at the time available to him, yet failed to use those alternatives, and failed to exhaust those alternatives.

34.    Defendants RAMIREZ and DOE OFFICERS unreasonably escalated the situation including when they began using deadly force against Decedent, causing him great fear, pain, and harm.

35.    Throughout the incident, the Defendants displayed negligent tactics, prior to, during, and after their uses of deadly force, including, but not limited to their: poor positioning, poor planning, lack of communication with each other and deficient communication with Decedent, unreasonable use of force, escalating the situation, and failing to de-escalate the situation.

36.    Further, Defendants' actions and inactions were unreasonable and in violation of basic officer training.

37.    Each Defendant performed an affirmative act, participated in another Defendant's affirmative act, and/or omitted to perform an act which that Defendant is legally required to do. Each Defendant either directly and personally participated in the deprivation of Decedent's and Plaintiff's rights or set in motion a series of acts by others which that Defendant knew or reasonably should have known would cause others to inflict a constitutional injury on Decedent and Plaintiff.  Each Defendant was an integral participant

in their own use of excessive force upon Decedent and/or in each of their fellow Defendants' use of force against Decedent.

38.    As a direct and proximate result of the individual Defendants' actions, omissions, misjudgments, intentional conduct, negligent conduct, reckless disregard, deliberate indifference and otherwise wrongful conduct of Defendants, including their use of excessive and unreasonable force and tactics under the totality of the circumstances, Decedent was caused to suffer great physical and mental pre-death pain and suffering, harm, injury, damages, loss of enjoyment of life, and loss of life.

39.    Additionally, as a direct and proximate result of the individual Defendants' actions, omissions, misjudgments, intentional conduct, negligent conduct, reckless disregard, deliberate indifference and otherwise wrongful conduct of Defendants, including their use of excessive and unreasonable force and tactics under the totality of the circumstances, including their use of excessive and unreasonable force, causing the wrongful death of Decedent LARIOS, Plaintiff has suffered and continues to suffer the lifelong loss of Decedent's love, care, comfort, society, companionship, assistance, protection, affection, moral support, financial support, and loss of services.

40.    The conduct of the individual Defendant Officers was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff and Decedent in that Plaintiff and Decedent's constitutional rights were intentionally deprived and violated, and/or there was reckless disregard for the constitutional rights of Plaintiff and Decedent. As such, their conduct as alleged herein entitles Plaintiff to an award of exemplary and punitive damages from the individual Defendants. Plaintiff brings no action for punitive damages against Defendant CITY.

41.    Pursuant to 42 U.S.C. §1988(b), Plaintiff is entitled to recover reasonable attorney fees, costs, and interests incurred herein. Pursuant to Cal.

Civ. Code §52.1, Plaintiff is entitled to recover civil penalties, costs, and reasonable attorney fees including treble damages. Pursuant to Cal. Code of Civ. Pro. §1021.5, Plaintiff seeks reasonable attorneys' fees.

**FIRST CLAIM FOR RELIEF**

**Fourth Amendment —Excessive Force (42 U.S.C. §1983)**

(Plaintiff against Defendant RAMIREZ)

42.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 41 of this Complaint with the same force and effect as if fully set forth herein.

43.   Defendant RAMIREZ was acting under the color of state law and within the course and scope of his employment.

44.   Defendant RAMIREZ used excessive force against Decedent when he fired lethal rounds, striking Decedent. Defendant's unjustified use of force, deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

45.   Decedent did not fire a weapon at Defendants RAMIREZ, DOE OFFICERS or any other person; Decedent did not point a weapon at Defendants RAMIREZ, DOE OFFICERS or any other person; Decedent was not immediately about to harm anyone, including Defendants RAMIREZ or DOE OFFICERS, immediately prior to or during the Defendant RAMIREZ'S use of deadly force; Decedent did not verbally threaten any person or officer prior to the Defendant RAMIREZ'S use for deadly force; Decedent was not running or lunging toward any officer or person immediately prior to or during Defendant RAMIREZ'S use of deadly force; Decedent did not harm any person and was not about to harm any person prior to and during Defendants'

use of deadly force; and Decedent was shot in the back while moving away from officers. Thus, Decedent was not an immediate threat of death or serious bodily injury to any officer or person at the time of the shots.

46.    Defendants had several reasonable less-intrusive alternatives available to them prior to their use of deadly force, but failed to attempt and/or exhaust those alternatives, including but not limited to: seeking cover; maintaining a safe and tactically advantageous distance from Decedent; de-escalating the situation with communication; planning and coordinating movements and responsibilities of officers; containing Decedent; and/or utilizing less-lethal force such as a K-9, 40mm launcher, Taser, or OC spray.

47.    Defendants had time and opportunity to provide a deadly force warning prior to their use of force, but failed to do so, despite it being safe, reasonable, and feasible to do so.

48.    The Defendants greatly outnumbered Decedent; had superior training and experience to Decedent; and were in better physical condition than Decedent.

49.    Therefore, Defendants violated Decedent's Fourth Amendment rights when they used excessive and unreasonable force against Decedent, firing several lethal rounds at him, and striking him, when Decedent was not an immediate threat of death or serious bodily injury at the time, there were other reasonable alternatives to the use of deadly force, and no verbal warning was given prior to the shots that deadly force would be used.

50.    As a result of the foregoing, Decedent suffered great physical and mental pre-death pain and suffering, harm, injury, and damage, loss of enjoyment of life, loss of opportunity of life, and loss of life.

51.    The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and

therefore warrants the imposition of exemplary and punitive damages as to Defendants.

52.     As a result of their misconduct, Defendants are liable for Decedent's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

53.     Plaintiff seeks compensatory and punitive damages.

54.     Plaintiff also seeks reasonable stautory attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF

**Fourteenth Amendment – Denial of Familial Relationship (42 U.S.C. §1983)**

(Plaintiff against Defendants RAMIREZ)

55.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 54, inclusive, as if fully set forth herein.

56.     Defendant RAMIREZ acted within the course and scope of his employment as police officers for the Defendant CITY and acted under color of state law.

57.     Plaintiff had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her son, Decedent.

58.     Decedent had a cognizable interest under the Due Process Clause of Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience.

59.     The aforementioned actions of Defendants RAMIREZ along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Decedent and Plaintiff,

and with purpose to harm unrelated to any legitimate law enforcement objective.

60.     As a direct and proximate result of these actions, Decedent experienced pain and suffering and eventually died. Defendant RAMIREZ thus violated the substantive due process rights of Plaintiff to be free from unwarranted interference with her familial relationship with Decedent.

61.     As a direct and proximate cause of the acts of Defendant RAMIREZ, Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent, and will continue to be deprived of the remainder of her natural life.

62.     As a result of their misconduct, Defendants are liable to Plaintiff, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

63.     The conduct of Defendant RAMIREZ was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendant.

64.     Plaintiff brings this claim individually and seeks individual death damages for the violation of her rights. Plaintiff also seeks attorney's fees and costs under this claim.

### THIRD CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(Plaintiff against Defendants CITY, MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS)

65.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 64 of this Complaint with the same force and effect as if fully set forth herein.

66.   Defendants RAMIREZ, MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOES 1-10 were acting under the color of state law and within the course and scope of their employment with Defendant CITY.

67.   The acts of Defendants deprived Plaintiff and Decedent of their particular rights under the United States Constitution as alleged herein.

68.   Upon information and belief, a final policymaker, including Defendants MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS, ratified Defendants RAMIREZ and DOE OFFICERS' acts and the bases for their actions. Upon information and belief, the final policymaker knew of and specifically approved of Defendants' conduct and the bases for them, including their actions and inactions, pre-shooting tactics, and use of deadly force.

69.   Upon information and belief, the written policies and basic officer training with respect to the incident include that law enforcement officers are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the officers or others. The Defendants' actions deviated from these written policies and basic law enforcement training because Decedent did not pose an immediate threat of death or serious bodily injury to the involved law enforcement officers or anyone else and there were reasonable alternatives.

70.   Upon information and belief, a final policymaker(s) determined that the acts of Defendants were "within policy," and have ratified multiple prior incidents of the use of excessive force, including excessive less-lethal force and deadly force.

71.   Upon information and belief, Defendant CITY approved of Defendants RAMIREZ and DOE OFFICERS' actions and inactions, after which Defendant CITY officials, including MCDONNELL, BARRAGAN, YU,

SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS, found the Defendants RAMIREZ and DOE OFFICERS' conduct was within the official policies of Defendants CITY and/or consistent with CITY police officers' basic training. On information and belief, the basis for such approval was based on the Defendants RAMIREZ and DOE OFFICERS' self-serving statements, despite evidence that Decedent was not an immediate threat of death or serious bodily injury to anyone at the time the excessive force was used, reasonable alternatives were available, and no warning was given.

72.    Defendant BOPC members, evaluated this matter by considering the CITY/LAPD Force Investigation Division ("FID") investigation and related documents, relevant training materials of the involved officers, the CITY Use of Force Review Board ("UOFRB") recommendations, the report and recommendations of the Office of the Inspector General.

73.    Thus, the FID, MCDONNELL, OIG, UOFRB, and BOPC knew or should have known that Decedent was not an immediate threat of death or serious bodily injury at the time as described and alleged herein, yet nevertheless concluded that Defendant RAMIREZ'S conduct was "in policy."

74.    Upon information and belief, after this incident, Defendants RAMIREZ and DOE OFFICERS were not disciplined, reprimanded, retrained, provided additional training, suspended, or otherwise penalized in connection with their conduct in this incident.

75.    Upon information and belief, the following are only a few examples of cases where the involved LAPD officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicate that the Defendant CITY routinely ratifies such behavior:

a.    *Cano, et al. v. City of Los Angeles*, 2:15-cv-00333-JAK-E, the family of an unarmed man, who was shot and killed by LAPD Rampart

officers, alleged that the force used by the officers was excessive and unreasonable. Police reports confirmed that decedent was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

b.    *Contreras v. City of Los Angeles*, 2:11-cv-01480-SVW (SHx), a unanimous jury award for plaintiff after finding that the involved LAPD officers used excessive and unreasonable force when they shot the unarmed plaintiff.

c.    *Glover v. City of Los Angeles, et al.*, 2:21-cv-09915-FWS-AS, the plaintiff alleged that CITY police officers used excessive and unreasonable force, where officers claimed that plaintiff pointed a gun at them. Records confirmed that the plaintiff did not point a gun at officers and was nevertheless shot in the back. The involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

d.    *Hernandez, et al. v. City of Los Angeles, et al.*, 2:16-cv-02689, a unanimous jury found that two LAPD officers used excessive and unreasonable force and restraint against the unarmed decedent.

e.    *Herrera, et al. v. City of Los Angeles, et al.*, 16-cv-02719-DSF (SHx), a unanimous jury award for plaintiffs after finding that the involved LAPD officer used excessive force by shooting the decedent.

f.    *L.D., et al. v. City of Los Angeles*, 2:16-cv-04626-PSG, a unanimous jury found that officers used excessive and unreasonable force against decedent, including the use of tasers, bean bag shotguns, and ultimately deadly force.

g.    *Mears, et al. v. City of Los Angeles, et al.*, 2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability on the part of the City for

failure to properly train its LAPD officers and found that the involved officers' use of deadly force was excessive and unreasonable.

h.    *Medina v. City of Los Angeles*, CV 06-4926-CBM (Ex), plaintiff alleged that the involved LAPD officers used excessive and unreasonable force when they kept the decedent down in a prone position while he was handcuffed and hobbled and placed weight on his back and pressure on his neck for an extended period of time. The medical examiner in that case confirmed that decedent died as a result of restraint asphyxia. A unanimous jury returned a verdict in plaintiff's favor, finding that the use of force was excessive and unreasonable. In that case, the involved officers were not disciplined or retrained for their use of force, and the CITY found that the officer's conduct was justified and did not violate any CITY policy.

i.    *Michaelidis v. City of Los Angeles, et al.*, 2:22-cv-05620-MCS-MAA, the plaintiffs alleged that CITY police officers used excessive force. Records confirmed that the decedent was walking slowly with a weapon down by his side and approximately 20 feet away from officers but was nevertheless shot, including while falling to the ground. The officers involved were not disciplined or retrained for their use of deadly force.

j.    *Navas, et al. v. City of Los Angeles, et al.*, CV15-09515 SVW (JCx), the LAPD officer's use of deadly force against plaintiff was excessive and unreasonable.

k.    *P.C., et al. v. City of Los Angeles*, CV 07-3413 PLA, a unanimous jury award for plaintiffs after finding that the involved LAPD officers' use of deadly force was excessive and unreasonable.

76.    Upon information and belief, Defendant CITY, through its officials, had either actual or constructive knowledge of the deficient training, policies, practices and customs alleged herein. Despite having knowledge as stated herein, these Defendant CITY officials condoned, tolerated and through

actions and inactions thereby ratified such deficient policies. In doing so, said Defendant CITY officials acted with deliberate indifference to the foreseeable effects and consequences of these deficient policies, including their policy of ratification, with respect to the constitutional rights of Plaintiff and Decedent and other individuals similarly situated.

77.     By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant CITY officials acted with intentional, reckless, and callous disregard for the life and rights of Plaintiff and Decedent. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and their officials were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff and Decedent.

78.     Accordingly, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

79.     The conduct of the Defendants MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and Decedent and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

80.     Plaintiff seeks compensatory and punitive damages.

81.     Plaintiff also seeks reasonable stautory attorneys' fees and costs.

## **FOURTH CLAIM FOR RELIEF**

### **Municipal Liability – Failure to Train (42 U.S.C. §1983)**

(Plaintiff against Defendants CITY, MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS)

82.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 81 of this Complaint with the same force and effect as if fully set forth herein.

83.    Defendants RAMIREZ, MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOES 1-10 were acting under the color of state law and within the course and scope of their employment with Defendants CITY.

84.    The acts of Defendants deprived Plaintiff and Decedent of their particular rights under the United States Constitution as alleged herein.

85.    The training policies of Defendants CITY were not adequate to train their officers to handle the usual and recurring situations with which they must deal. This includes training with respect to tactics, the use of force, including deadly force, de-escalation techniques, controlling officer emotions and fears, inappropriate "shoot/don't shoot" scenarios in training that promote the use of unreasonable force, and continually assessing a situation to justify every shot fired. In addition to failing to train officers to safely handle obvious, recurring situations, Defendant CITY affirmatively chose a policy it knew was likely to lead to, and in fact had previously led to, deprivations of constitutional rights including unreasonable seizures in violation of the Fourth Amendment.

86.    Defendants CITY, by its officials, were deliberately indifferent to the obvious consequences of its failure to train its officers adequately, including training with respect to tactics, the use of force, including deadly force, and de-escalation techniques.

87.     The failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiff and Decedent's rights by Defendants; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff's and Decedent's rights as to be the moving force that caused the ultimate injury.

88.     On information and belief, Defendant CITY failed to train Defendants RAMIREZ and DOE OFFICERS properly and adequately, including regarding the following:

a.     Not providing adequate time and resources for officers to train when the training does exist so that the officers can rely on that training during incidents.

b.     Not enforcing the basic training standards, when they do exist, that are designed to prevent officers from using excessive and unreasonable force.

c.     Not adequately providing recurring training so that officers do not lose necessary perishable skills, and not re-training officers who have used force in the field.

d.     Effective communication to enable officers to gain cooperation and voluntary compliance in stressful situations.

e.     Effective communication as a basic element of the use of force; the goal of which to gain voluntary compliance without resorting to physical force, especially deadly force.

f.     That the use of deadly force is the most serious decision a peace officer may ever have to make, and such a decision should be guided by the reverence for human life and used only when other means of control are unreasonable or have been exhausted.

g.     Reverence for life as the foundation on which the use of deadly force rests. Deadly force is always the last resort to be used in the direst of

PLAINTIFF'S COMPLAINT FOR DAMAGES

circumstances. The authority to use deadly force is an awesome responsibility given to peace officers by the people who expect them to exercise that authority judiciously. In the law enforcement/community partnership, the expectation that peace officers are self-disciplined and accountable.

h.    Self-control as one of a peace officer's greatest assets in dealing with a person or a situation.

i.    Unreasonable fear includes overreactions to true potential threats as well as reactions to unreal threats based on prejudice or poor application of experience.

j.    Unreasonable fear can be responsible for inappropriate responses such as a failure to respond or responding inappropriately (using unreasonable force).

k.    Unreasonable force occurs when the type, degree, and duration of force employed was neither necessary nor appropriate.

l.    The community expects that its peace officers will use only reasonable amounts of force and only use deadly force when absolutely necessary. Likewise, it expects that someone, including peace officers, will intervene if reasonable force is exceeded.

m.    Use of other techniques to the use of deadly force including but are not limited to de-escalation, communication, conflict resolution, defensive tactics, less-lethal force, and use of time and distance.

n.    That a officers' subjective fear of future harm alone is insufficient as an imminent threat. An imminent threat is one that requires instant attention.

o.    That the totality of circumstances includes the officers pre-shooting tactical conduct when evaluating whether to use deadly force and whether that force is reasonable or within the training policies.

p.    Training with respect to tactics.

-24-

q. Training with respect assessing when it is appropriate to use of force, including deadly force, and training on how much force is appropriate even when some force is appropriate.

89. Upon information and belief, the following are only a few examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the CITY failed to adequately train its officers with regard to the use of force:

a. *Cano, et al. v. City of Los Angeles*, 2:15-cv-00333-JAK-E, the family of an unarmed man, who was shot and killed by LAPD Rampart officers, alleged that the force used by the officers was excessive and unreasonable. Police reports confirmed that decedent was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

b. *Contreras v. City of Los Angeles*, 2:11-cv-01480-SVW (SHx), a unanimous jury award for plaintiff after finding that the involved LAPD officers used excessive and unreasonable force when they shot the unarmed plaintiff.

c. *Glover v. City of Los Angeles, et al.*, 2:21-cv-09915-FWS-AS, the plaintiff alleged that CITY police officers used excessive and unreasonable force, where officers claimed that plaintiff pointed a gun at them. Records confirmed that the plaintiff did not point a gun at officers and was nevertheless shot in the back. The involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     d.     *Hernandez, et al. v. City of Los Angeles, et al.*, 2:16-cv-02689, a unanimous jury found that two LAPD officers used excessive and unreasonable force and restraint against the unarmed decedent.

     e.     *Herrera, et al. v. City of Los Angeles, et al.*, 16-cv-02719-DSF (SHx), a unanimous jury award for plaintiffs after finding that the involved LAPD officer used excessive force by shooting the decedent.

     f.     *L.D., et al. v. City of Los Angeles*, 2:16-cv-04626-PSG, a unanimous jury found that officers used excessive and unreasonable force against decedent, including the use of tasers, bean bag shotguns, and ultimately deadly force.

     g.     *Mears, et al. v. City of Los Angeles, et al.*, 2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability on the part of the City for failure to properly train its LAPD officers and found that the involved officers' use of deadly force was excessive and unreasonable.

     h.     *Medina v. City of Los Angeles*, CV 06-4926-CBM (Ex), plaintiff alleged that the involved LAPD officers used excessive and unreasonable force when they kept the decedent down in a prone position while he was handcuffed and hobbled and placed weight on his back and pressure on his neck for an extended period of time. The medical examiner in that case confirmed that decedent died as a result of restraint asphyxia. A unanimous jury returned a verdict in plaintiff's favor, finding that the use of force was excessive and unreasonable. In that case, the involved officers were not disciplined or retrained for their use of force, and the CITY found that the officer's conduct was justified and did not violate any CITY policy.

     i.     *Michaelidis v. City of Los Angeles, et al.*, 2:22-cv-05620-MCS-MAA, the plaintiffs alleged that CITY police officers used excessive force. Records confirmed that the decedent was walking slowly with a weapon down by his side and approximately 20 feet away from officers but was

nevertheless shot, including while falling to the ground. The officers involved were not disciplined or retrained for their use of deadly force.

    j.    *Navas, et al. v. City of Los Angeles, et al.*, CV15-09515 SVW (JCx), the LAPD officer's use of deadly force against plaintiff was excessive and unreasonable.

    k.    *P.C., et al. v. City of Los Angeles*, CV 07-3413 PLA, a unanimous jury award for plaintiffs after finding that the involved LAPD officers' use of deadly force was excessive and unreasonable.

90.    By reason of the aforementioned acts and omissions, and as a direct and proximate cause of these acts and omissions, Plaintiff has suffered the permanent loss of her son and Decedent had great pre-death pain and suffering, loss of enjoyment of life, and loss of life.

91.    Upon information and belief, Defendant CITY, through its officials, had either actual or constructive knowledge of the deficient training policies, practices and customs alleged herein. Despite having knowledge as stated herein, these Defendant CITY officials condoned, tolerated and through actions and inactions thereby ratified such deficient training. In doing so, Defendant CITY officials acted with deliberate indifference to the foreseeable effects and consequences of such deficient training with respect to the constitutional rights of Plaintiff and Decedent and other individuals similarly situated.

92.    Through its deficient training, Defendant CITY officials acted with intentional, reckless, and callous disregard for the life and rights of Plaintiff and Decedent. Furthermore, the deficient training tolerated by Defendants CITY and its officials were affirmatively linked to and was a significantly influential force behind the injuries of Plaintiff and Decedent.

93.    Accordingly, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

94.    The conduct of Defendants MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS in condoning, maintaining, and providing deficient training was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and Decedent, and therefore warrants the imposition of exemplary and punitive damages as to these Defendant.

95.    Plaintiff seeks compensatory and punitive damages.

96.    Plaintiff also seeks reasonable stautory attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Plaintiff against Defendants CITY, MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS)

97.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 96 of this Complaint with the same force and effect as if fully set forth herein.

98.    Defendants RAMIREZ, MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOES 1-10 were acting under the color of state law and within the course and scope of their employment with Defendant CITY and LAPD.

99.    Defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

100.    On information and belief, Defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Plaintiff and Decedent's harm.

101.    Upon information and belief, in addition to those policies alleged above, Defendants CITY and MCDONNELL, BARRAGAN, YU, SOUTHERS,

GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS maintained, inter alia, the following unconstitutional customs, practices, and policies:

  a.    Using excessive force, including excessive deadly force.

  b.    Providing inadequate training regarding the use of deadly force.

  c.    Employing and retaining as employees Defendants RAMIREZ and DOE OFFICERS, who Defendant CITY at all times material herein knew or reasonably should have known used excessive force.

  d.    Inadequately supervising, training, controlling, assigning, and disciplining CITY officers, and other personnel, including Defendants RAMIREZ and DOE OFFICERS, who Defendant CITY knew or in the exercise of reasonable care should have known had the propensities to use excessive force.

  e.    Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by CITY officials, Defendants RAMIREZ and DOE OFFICERS.

  f.    Failing to adequately discipline CITY officers, including Defendants RAMIREZ and DOE OFFICERS, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

  g.    Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional.

  h.    Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved.

  i.    Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which officials do not report other officials'

errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another official, while following the code, the official being questioned will claim ignorance of the other officials' wrongdoing.

j.      Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of law enforcement shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officials for criminal prosecution who participate in unreasonable shootings.

k.      Upon information and belief, CITY, including but not limited to LAPD, has an unofficial policy, practice and/or custom of finding almost all of its officer involved shootings to be within policy, of not disciplining its officers involved in shootings, not retraining or firing officers involved in shootings, and of not recommending criminal charges against their officers involved in excessive and unreasonable officer-involved shootings. As a result, officers involved in excessive uses of deadly force are allowed back to patrol the streets even though CITY knew, or should have known, that these officers have a propensity for using excessive deadly force against the citizens that the officers are supposed to protect and serve, especially against minorities and the mentally ill.

l.      Upon information and belief, as a result of CITY policy, custom and/or practices, LAPD officers know that if they use deadly excessive force against someone, they will not be disciplined and their use of force will be found within policy, which results in a significant number of CITY officers being involved in numerous shootings. This policy, custom and/or practice was established by supervising and managerial employees of CITY, specifically, those employees tasked with determining whether officer-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for

those employees responsible for making recommendations of criminal charges being filed against officers who use excessive deadly force; and

m.      Upon information and belief, this policy, custom and/or practice long lasting and persistent, and existed well before Decedent was shot by Defendants RAMIREZ and DOE OFFICERS. This policy, custom and/or practice was established so that CITY officers do not bear the responsibility for the people that they use excessive deadly force against. This policy, custom and/or practice exists so that the public does not have such a negative perception of CITY and its departments so that CITY can avoid the repercussions associated with its officers' use of excessive deadly force against citizens, including negative publicity, avoiding criminal prosecution, and avoiding civil liability. A significant reason that this policy, custom and/or practice was established was to avoid CITY being liable, under a theory of vicarious liability, for the uses of excessive and unreasonable deadly force by its employees. In other words, there is a large financial incentive for CITY to erroneously determine that most, if not all, of its officers' uses of deadly force are within policy. If CITY, through its policymakers and supervisors, would admit that their officers were at fault for using excessive and unreasonable deadly force, then CITY is aware of how much they would have to pay for any associated litigation.

102.   Defendants CITY and MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with

respect to the constitutional rights of Plaintiff and Decedent and other individuals similarly situated.

103.   By perpetrating, sanctioning, tolerating, and ratifying outrageous conduct and other wrongful acts, Defendants MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS acted with intentional, reckless, and callous disregard for the life of Decedent and for Plaintiff and Decedent's constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY, MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff and Decedent.

104.   Based on information and belief, the following are only a few examples of cases evidencing Defendant CITY'S unconstitutional policies, where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that CITY routinely ratifies such behavior and maintains a practice of allowing such behavior:

   a.   *Cano, et al. v. City of Los Angeles*, 2:15-cv-00333-JAK-E, the family of an unarmed man, who was shot and killed by LAPD Rampart officers, alleged that the force used by the officers was excessive and unreasonable. Police reports confirmed that decedent was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

   b.   *Contreras v. City of Los Angeles*, 2:11-cv-01480-SVW (SHx), a unanimous jury award for plaintiff after finding that the involved LAPD officers used excessive and unreasonable force when

they shot the unarmed plaintiff.

c.   *Glover v. City of Los Angeles, et al.*, 2:21-cv-09915-FWS-AS, the plaintiff alleged that CITY police officers used excessive and unreasonable force, where officers claimed that plaintiff pointed a gun at them. Records confirmed that the plaintiff did not point a gun at officers and was nevertheless shot in the back. The involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

d.   *Hernandez, et al. v. City of Los Angeles, et al.*, 2:16-cv-02689, a unanimous jury found that two LAPD officers used excessive and unreasonable force and restraint against the unarmed decedent.

e.   *Herrera, et al. v. City of Los Angeles, et al.*, 16-cv-02719-DSF (SHx), a unanimous jury award for plaintiffs after finding that the involved LAPD officer used excessive force by shooting the decedent.

f.   *L.D., et al. v. City of Los Angeles*, 2:16-cv-04626-PSG, a unanimous jury found that officers used excessive and unreasonable force against decedent, including the use of tasers, bean bag shotguns, and ultimately deadly force.

g.   *Mears, et al. v. City of Los Angeles, et al.*, 2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability on the part of the City for failure to properly train its LAPD officers and found that the involved officers' use of deadly force was excessive and unreasonable.

h.   *Medina v. City of Los Angeles*, CV 06-4926-CBM (Ex), plaintiff alleged that the involved LAPD officers used excessive and unreasonable force when they kept the decedent down in a prone position while he was handcuffed and hobbled and placed weight on his back and pressure on his neck for an extended period of time. The medical examiner in that case confirmed that decedent died as a result of restraint asphyxia. A unanimous

jury returned a verdict in plaintiff's favor, finding that the use of force was excessive and unreasonable. In that case, the involved officers were not disciplined or retrained for their use of force, and the CITY found that the officer's conduct was justified and did not violate any CITY policy.

i. *Michaelidis v. City of Los Angeles, et al.*, 2:22-cv-05620-MCS-MAA, the plaintiffs alleged that CITY police officers used excessive force. Records confirmed that the decedent was walking slowly with a weapon down by his side and approximately 20 feet away from officers but was nevertheless shot, including while falling to the ground. The officers involved were not disciplined or retrained for their use of deadly force.

j. *Navas, et al. v. City of Los Angeles, et al.*, CV15-09515 SVW (JCx), the LAPD officer's use of deadly force against plaintiff was excessive and unreasonable.

k. *P.C., et al. v. City of Los Angeles*, CV 07-3413 PLA, a unanimous jury award for plaintiffs after finding that the involved LAPD officers' use of deadly force was excessive and unreasonable.

105. By reason of the aforementioned acts and omissions, Plaintiff has suffered the lifelong loss of her son and Decedent had severe pre-death pain and suffering, loss of enjoyment of life, and loss of life.

106. Accordingly, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

107. The conduct of the Defendants MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOE SUPERVISORS were willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and Decedent and therefore warrants the imposition of exemplary and punitive damages as to these Defendants.

108. Plaintiff seeks compensatory and punitive damages.

109. Plaintiff also seeks reasonable stautory attorneys' fees and costs

### SIXTH CLAIM FOR RELIEF

**Battery (Cal. Govt. Code §820 and California Common Law)**

(Plaintiff against Defendants RAMIREZ and DOE OFFICERS in their individual capacity, directly; and Defendant CITY vicariously)

110.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 109 of this Complaint with the same force and effect as if fully set forth herein.

111.   Defendants RAMIREZ and DOE OFFICERS, while working as officials for the LAPD and acting within the course and scope of their duties, intentionally shot Decedent and used unreasonable and excessive force against him as alleged herein in violation of the Fourth Amendment.

112.   The use of deadly force against Decedent by Defendants was unreasonable because Decedent did not pose an immediate threat of death or serious bodily harm to any person at any time, there were less lethal alternatives, and no verbal warning was given.

113.   At all relevant times, Decedent was not an immediate threat of bodily injury to anyone, including Defendants.

114.   Decedent never consented to the use of force used against him by Defendants.

115.   Decedent was harmed when he was shot multiple times, and experienced severe pain and suffering, injury, and damages.

116.   The Defendants' use of unreasonable force, including deadly force, was the direct cause, proximate cause, and only cause of Decedent's pre-death pain and suffering, injury, harm, and damages, loss of enjoyment of life and loss of life. Further, Defendants' use of unreasonable force was the direct and proximate cause of Plaintiff's life-long loss of her son. In other words, the unreasonable force was at least a substantial factor in causing Decedent and Plaintiff's damages.

117.   Defendants caused various injuries as mentioned herein and are liable either because they directly harmed Decedent or integrally participated in or failed to intervene in the incident and engaged in other acts and/or omissions around the time of the incident. Defendants' acts and omissions resulted in harmful and offensive touching of Decedent.

118.   Defendants are directly liable for their actions and inactions pursuant to Cal. Govt. Code §820(a).

119.   Defendant CITY is vicariously liable for the wrongful acts of their employees, including Defendants RAMIREZ and DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

120.   The conduct of Defendants RAMIREZ and DOE OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Decedent, entitling Plaintiff to an award of exemplary and punitive damages as to these Defendants.

121.   Plaintiff seeks compensatory damages, and punitive damages.

## SEVENTH CLAIM FOR RELIEF
### Negligence (Cal. Govt. Code §820 and California Common Law)
(Plaintiff against Defendants RAMIREZ, MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and DOES 1-10 in their individual capacity, directly; and Defendant CITY vicariously)

122.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 121 of this Complaint with the same force and effect as if fully set forth herein.

123.   At all relevant times, Defendants RAMIREZ, MCDONNELL, BARRAGAN, YU, SOUTHERS, GARCIA, CALANCHE, SHIELDS, and

1    DOES 1-10 were working as officials for the CITY and LAPD, respectively,

2    and acting under color of state law and within the course and scope of their

3    duties.

4         124.   Peace officers, including Defendants, have a duty to use

5    reasonable care to prevent harm or injury to others. This duty includes using

6    appropriate tactics, giving appropriate commands, giving warnings, and not

7    using any force unless necessary, using less than lethal options, and only using

8    deadly force as a last resort. These duties also include providing proper

9    training and equipment to officials so that they may perform their duties in

10   accordance with the department policies, properly investigate use of force

11   incidents, and punish, re-train, terminate, and/or prosecute violators of those

12   policies and the law.

13        125.   Defendants breached their duty of care by their conduct as alleged

14   herein. Upon information and belief, the actions and inactions of Defendants

15   were negligent and reckless, including but not limited to:

16             a.    The failure to properly and adequately assess the need to use

17        force or deadly force against Decedent.

18             b.    The negligent use of force.

19             c.    The negligent tactics and handling of the situation with

20        Decedent, including pre-shooting negligence.

21             d.    The failure to properly train and supervise employees, both

22        professional and non-professional.

23             e.    The negligent communication of information during the incident.

24             f.    The negligent investigation and resulting conduct after the

25        incident.

26        126.   As a direct and proximate result of Defendants' conduct as alleged

27   above, and other undiscovered negligent conduct, Decedent was caused to

28   suffer severe pre-death pain and suffering, injury, harm, and damages, loss of

enjoyment of life and loss of life. Further, Defendants' use of unreasonable force was the direct and proximate cause of Plaintiff's life-long loss of her son. In other words, the unreasonable force was at least a substantial factor in causing Decedent and Plaintiff's damages.

127.   At all relevant times, Decedent was not an immediate threat of death or serious bodily injury to anyone, including Defendants, no warning was given that deadly force was going to be used prior to the use of deadly force, and less than lethal alternatives were available to Defendants.

128.   Further, Decedent's harm, specifically being shot by the Defendants when Decedent was not an immediate threat of death or serious bodily injury to anyone, ordinarily would not have happened unless Defendants were negligent.

129.   The harm inflicted by Defendants was caused by something that only the Defendants controlled. The Defendants had control over their firearms, as well as control over the tactical decisions made during the incident.

130.   As a result of their misconduct, Defendants are liable for Plaintiff and Decedent's injuries, either because they were an integral participant in the negligent conduct or because they failed to intervene.

131.   Pursuant to Cal. Gov't Code §820(a), "a public employee is liable for injury caused by his act or omission to the same extent as a private person."

132.   Defendant CITY is vicariously liable for the wrongful acts of Defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability. Defendant CITY is vicariously liable under California law and the doctrine of *respondeat superior*.

133.   Plaintiff seeks attorneys' fees under this claim pursuant to Cal. Code of Civ. Pro. §1021.5 for enforcement of the important rights effecting the public interest that Plaintiff, and those similarly situated, to be free from intimidation and physical assault by law enforcement as described herein.

134.   Plaintiff seeks compensatory damages, including general and special damages in an amount to be proven at trial.

### EIGHTH CLAIM FOR RELIEF
### Bane Act (Violation of Cal. Civil Code §52.1)
(Plaintiff against Defendants RAMIREZ and DOE OFFICERS in their individual capacity, directly; and Defendant CITY vicariously)

135.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 134 of this Complaint with the same force and effect as if fully set forth herein.

136.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using or attempting to use violent acts, threats, intimidation, or coercion to interfere with the exercise or enjoyment by any individuals' rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state in retaliation against another person for exercising that person's constitutional rights.

137.   On information and belief, Defendants RAMIREZ and DOE OFFICERS, while working for CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against Decedent, including by shooting him in the back without justification or excuse, and by integrally participating and failing to intervene in the above violence.

138.   When Defendants used excessive and unreasonable force against Decedent, they intentionally interfered with his civil rights to be free from excessive force.

139.   Further, the Defendants used excessive and unreasonable force in violation of the Constitution with intent to deprive Decedent of his Constitutional rights to be free from excessive force.

140.   On information and belief, Defendants intentionally violated Decedent's rights to be free from excessive force by demonstrating reckless disregard for his rights when Defendants shot Decedent.

141.   Defendants violated Decedent's Constitutional right to be free from excessive and unreasonable force by peace officers. Defendants intended to violate Decedent's rights and/or acted with reckless disregard with regard to Decedent's Constitutional rights, which is evidence that they intended to violate Decedent's rights.

142.   The conduct of Defendants was a substantial factor in causing Decedent's pre-death harms, losses, injuries, and damages, and his loss of enjoyment of life and loss of life.

143.   Defendant CITY is vicariously liable for the wrongful acts of Defendants, its respective employees, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of their employment if the employee's act would subject him or her to liability. Defendant CITY is vicariously liable under California law and the doctrine of *respondeat superior*.

144.   The conduct of the individual Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Decedent's rights, justifying an award of exemplary and punitive damages as to those Defendants.

1          145.   Plaintiff seeks compensatory damages, punitive damages, costs,

2    attorneys' fees, and treble damages under this claim.

3

4    ///

5    ///

6    ///

PLAINTIFF'S COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ESMERALDA LARIOS ALVARADO requests entry of judgment in his favor and against Defendants CITY OF LOS ANGELES; DANIEL RAMIREZ; JIM MCDONNELL; MATTHEW BARRAGAN; FLORENCE YU; ERROLL SOUTHERS; FABIAN GARCIA; MARIA CALANCHE; RASHA SHIELDS; and DOES 1-10, inclusive, as follows:

A.    For compensatory damages in whatever other amount may be proven at trial, under federal and state law.

C.    For punitive and exemplary damages against the individual defendants in an amount to be proven at trial.

D.    For statutory damages.

F.    For reasonable attorneys' fees, and treble damages, including litigation expenses.

G.    For interests and costs of suit; and

H.    For such further other relief as the Court may deem just, proper, and appropriate.

DATED:    August 1, 2025         **LAW OFFICES OF DALE K. GALIPO**

By: _____
              */s/ Dale K. Galipo*
                    Dale K. Galipo
                    Marcel F. Sincich
                    *Attorneys for Plaintiff*

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff ESMERALDA LARIOS ALVARADO hereby submits this demand that this action be tried in front of a jury.


DATED:    August 1, 2025          **LAW OFFICES OF DALE K. GALIPO**


By: _____ */s/ Dale K. Galipo* _____
Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiff*