**HYDEE FELDSTEIN SOTO**, City Attorney (SBN 106866)
**DENISE C. MILLS**, Chief Deputy City Attorney (SBN 191992)
**KATHLEEN KENEALY**, Chief Assistant City Attorney (SBN 212289)
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney (SBN 192872)
**TY A. FORD**, Deputy City Attorney (SBN 218365)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-6900 | Fax No.: (213) 978-8785
Email: Ty.Ford@lacity.org

*Attorneys for Defendants*, CITY OF LOS ANGELES and DANIEL RAMIREZ,

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESMERALDA LARIOS ALVARADO, individually and as successor in interest to ALEXANDER AGUILAR-LARIOS, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, DANIEL RAMIREZ; JIM MCDONNELL; MATTHEW BARRAGAN; FLORENCE YU; ERROLL SOUTHERS; FABIAN GARCIA; MARÍA CALANCHE; RASHA SHIELDS; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:25-cv-07136-MAR<br>*Hon. Mag. Margo A. Rocconi; – Ctrm. 790*<br><br>**DEFENDANTS' NOTICE OF MOTION AND *FIRST* MOTION *IN LIMINE* TO BIFURCATE LIABILITY AND DAMAGES (COMPENSATORY AND PUNITIVE)**<br><br>*[Filed concurrently with [Proposed] Order]*<br><br>**FPTC:** September 23, 2026<br>**Time:** 11:00 A.M.<br>**Dept:** 790, Roybal<br><br>**Trial:** October 20, 2026<br>**Time:** 9:00 A.M. |

TO THE HONORABLE COURT, PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Defendants CITY OF LOS ANGELES and DANIEL RAMIREZ (collectively "Defendants"), will and hereby do move this Court, before trial and prior to jury selection, for the following order in *limine* bifurcating this

action into two phases as follows: Phase 1 – liability; and Phase 2 - compensatory and punitive damages, if necessary.

This Motion is made on the grounds that pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, separate trials on the issues of liability and damages (compensatory and punitive), are needed in furtherance of convenience, to avoid prejudice and jury confusion, and to promote the expeditious and economical trial of this action.

Counsel met and conferred on Defendants' motions in limine on August 20, 2026. The parties were unable to agree on bifurcation of compensatory damages.

This Motion also is based upon the supporting Memorandum of Points and Authorities, the papers and pleadings on file in this action, and upon such further matters which may be presented at or before the hearing on this Motion.

Dated: August 26, 2026

**HYDEE FELDSTEIN SOTO**, City Attorney
**DENISE C. MILLS**, Chief Deputy City Attorney
**KATHLEEN KENEALY**, Chief Assistant City Atty.
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney

By: Ty A. Ford
**TY A. FORD**, Deputy City Attorney
*Attorneys for Defendants*, CITY OF LOS ANGELES and DANIEL RAMIREZ

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION.

This matter arises from a fatal officer-involved shooting that occurred on June 11, 2024, and that involved police Officers of the Los Angeles Police Department. Plaintiff is the mother of the decedent, Alexander Aguilar.

Plaintiff's instant lawsuit alleging the wrongful death of her son Alexander Aguilar ("Mr. Aguilar" or "Decedent"), by an LAPD Officer, which occurred on June 11, 2024. On that date, LAPD Officers, including Defendant Officer Daniel Ramirez, were patrolling the San Fernando Gardens Public Housing Complex when they observed Mr. Aguilar enter a black BMC with a fanny pack, which Officers believed from experience to be the type of bag used by gang members to carry and conceal firearms in this area. The Officers followed the vehicle, and then Officer Mata observed Mr. Aguilar exit the vehicle with a handgun in his right hand. Officer Mata yelled "*Gun! Gun! Gun! Gun!*" to his partner officers, Officer Ramirez and Officer Cervantes. Mr. Aguilar began to run into the housing complex, which consisted of numerous buildings. Officer Ramirez exited the LAPD vehicle and began to run after Mr. Aguilar, and was soon followed by Officers Mata and Cervantes on foot. As he followed Mr. Aguilar behind a purple van, Officer Ramirez observed that Mr. Aguilar remained armed, and Officer Ramirez unholstered his service pistol. Fearing that he could be shot by Mr. Aguilar, Officer Ramirez pointed his firearm in the direction of Mr. Aguilar, as they both continued in the foot pursuit at a distance of approximately 30 feet separating them. Mr. Aguilar continued to run in a southeast direction, and Officer Ramirez yelled to him, "*Stop or I'll shoot you!*" Mr. Aguilar continued running and then stumbled on a concrete pad, and his body rotated counterclockwise in the direction of Officer Ramirez while still holding his gun. Mr. Aguilar then rolled on his hip area, braced his fall with his right arm, and then regained his balance while still gripping his handgun. Officer Ramirez reasonably perceived that Mr. Aguilar was pointing his firearm at him and intended to shoot him. By the time Mr. Aguilar regained his footing,

he was approximately 14 feet from Officer Ramirez, still holding the handgun. Based on the totality of the circumstances, Officer Ramirez fired four rounds in a time period of 1.04 seconds towards Mr. Aguilar, and between each round, Officer Ramirez reasonably believed Mr. Aguilar posed a continuous threat of death or serious bodily injury. Mr. Aguilar was struck by one round, fell to the ground, and dropped his firearm. Officer Ramirez ceased firing his handgun. Mr. Aguilar was treated at the scene by LAFD paramedics and transported to the hospital, where he was pronounced dead. Mr. Aguilar's firearm was located in the grass and found to have been loaded.

Plaintiff alleges that the Officers used excessive deadly force and wrongfully cause the death of Mr. Aguilar in violation of federal and state laws. Plaintiff also alleges that the City of Los Angeles is vicariously liable under state law. Plaintiff seeks compensatory and punitive damages.

Defendants request that this case be bifurcated and that liability and damages (compensatory and punitive) be tried in two separate phases. Defendants believe that bifurcation will best serve the interests of judicial economy and fairness to Defendants. If Plaintiff is allowed to address the issues of compensatory and punitive damages before liability, particularly liability based on malice, fraud, or oppression, has been established, Defendants will be prejudiced at trial.

## II. FEDERAL RULE OF CIVIL PROCEDURE, RULE 42(b), AUTHORIZES THIS COURT TO ORDER SEPARATE TRIALS ON ANY ISSUE.

Rule 42(b) of the Federal Rules of Civil Procedure states in relevant part that, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of . . . any separate issue . . .." Fed. R. Civ. Proc. 42(b). The district court has "broad discretion to order separate trials" under this Rule. *Davis & Cox v. Summa Corp*. 751 F.2d 1507, 1517 (9th Cir. 1985). Factors to be considered in deciding whether to order separate trials include: avoiding prejudice, separability of the issues, convenience, judicial economy, and risk of confusion. *Bates v. United Parcel Service*, 204 F.R.D. 440, 448

(N.D. Cal. 2001). Other factors to be considered include: complexity of the issues, factual proof, and the possibility that the first trial may be dispositive of the case. *Calmar, Inc. v. Emson Research, Inc.*, 850 F.Supp. 861, 866 (C.D. Cal. 1994).

## III. FRE 401 AND 403 WEIGH IN FAVOR OF TRYING LIABILITY AND DAMAGES (COMPENSATORY AND PUNITIVE) SEPARATELY.

Liability and damages, including compensatory and punitive damages, are separate issues that should be tried separately. Trying damages separately from liability will avoid the risk of jury confusion arising from the factual proof required for damages, will further convenience and is conducive to expedition and economy. Here, Plaintiff is claiming that Mr. Aguilar suffered significant physical and emotional damages, including pre-death pain and suffering, and that the Plaintiff suffered significant emotional and financial damage from the alleged incident. Testimony as to Mr. Aguilar's and Plaintiff's damages, including emotional, physical and financial damages, has no bearing on whether Defendants Officer Ramirez used excessive or unreasonable force during the alleged incident. Whether Mr. Aguilar lived for any appreciable amount of time and whether he endured any pain and suffering also has no bearing on whether Defendant Officer Ramirez's actions were reasonable when they believed that Mr. Aguilar posed an imminent deadly threat to themselves and others. Allowing evidence as to Mr. Aguilar's damages, especially any evidence as to alleged pain and suffering, before a determination of liability is irrelevant under FRE 401 and extremely prejudicial to Defendants under FRE 403. As to Plaintiff's damages, any evidence as to their alleged emotional and/or financial damages also is irrelevant under FRE 401 and highly prejudicial to Defendants under FRE 403. The only purpose in allowing such evidence during the liability phase is to bias the jury in favor of Plaintiff and Mr. Aguilar by playing on the jurors' sympathies. Allowing this type of evidence also will take up an undue amount of time and resources if the jury finds that Defendant Ramirez is not liable. If Plaintiff prevails, any additional time may still be saved because a plaintiff's verdict may open immediate settlement negotiations.

As to the issue of punitive damages, Defendants are not opposed to the jury making a finding as to the predicate question of malice, fraud or oppression during the liability phase. However, any evidence and testimony regarding punitive damages would delve into private financial matters that are irrelevant to the issue of whether Defendants may be held liable in this case. Questions relevant to the amount of punitive damages, such as "Do you own a home?"; "Do you rent?"; "What is your net worth?"; "What are your debts?", etc., would be an unnecessary waste of time should Defendants prevail on the issue of liability. Allowing the introduction of such evidence has no probative value on the issue of liability. Even if there were some probative value, it is substantially outweighed by the danger of undue prejudice it would cause Defendants, as they may be denied a fair trial. Hearing such evidence during the liability phase would only serve to confuse the issues and mislead the jury. Hearing evidence of their financial condition also could prompt the jury to punish Defendants even if malice, fraud, or oppression has not been established.

Questions related to punitive damages and financial condition also are irrelevant to whether the City of Los Angeles had an unconstitutional custom, policy or practice that caused the alleged constitutional violations. Thus, presentation of punitive damages evidence prior to a determination of liability could cause undue prejudice to Defendants, as a jury could determine liability simply based on the amount of Defendants' wealth.

Accordingly, this Court should order that the issues of liability and damages, including compensatory and punitive damages, be tried separately. The Court further should order those questions concerning financial condition will not be allowed until the punitive damages phase, if any.

///

///

///

///

## IV. CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court issue an order bifurcating this case into two separate phases: Phase 1 – liability and Phase 2 - damages (compensatory and punitive), if necessary.

Dated: August 26, 2026

**HYDEE FELDSTEIN SOTO**, City Attorney
**DENISE C. MILLS**, Chief Deputy City Attorney
**KATHLEEN KENEALY**, Chief Assistant City Atty.
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney

By: Ty A. Ford
**TY A. FORD**, Deputy City Attorney
*Attorneys for Defendants*, CITY OF LOS ANGELES and DANIEL RAMIREZ