# "EXHIBIT A"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

ESMERALDA LARIOS ALVARADO, individually and as successor in interest to ALEXANDER AGUILAR-LARIOS, deceased,

Plaintiffs,

v. Case No. 2:25-cv-07136-MAR

CITY OF LOS ANGELES, DANIEL RAMIREZ; JIM MCDONNELL; MATTHEW BARRAGAN; FLORENCE YU; ERROLL SOUTHERS; FABIAN GARCIA; MARÍA CALANCHE; RASHA SHIELDS; and DOES 1-10, inclusive,

Defendants.

_________________________________/

STENOGRAPHIC REPORTER'S TRANSCRIPT OF

REMOTE VIDEOTAPED DEPOSITION OF

DANIEL RAMIREZ

WEDNESDAY, APRIL 29, 2026

Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No. 26271

APPEARANCES (Remote)

FOR THE PLAINTIFF:

LAW OFFICES OF DALE K. GALIPO
BY: MARCEL SINCICH, ESQ.
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
818.347.3333
msincich@galipolaw.com

FOR THE DEFENDANTS:

HYDEE FELDSTEIN SOTO
BY: TY A. FORD, Deputy City Attorney
200 North Main Street, 6th Floor,
City Hall East
Los Angeles, CA 90012
213.978.6900
Ty.ford@lacity.org

ALSO PRESENT:

Said Hofiani, Videographer

--oOo--

INDEX OF EXAMINATION

WITNESS: DANIEL RAMIREZ


EXAMINATION BY PAGE

MR. SINCICH........................5, 112

MR. FORD..............................110


EXHIBITS FOR REFERENCE


EXHIBIT DESCRIPTION PAGE

Ex 1 - Notice of Deposition.....................69

Ex 2 - Google map...............................70

Ex 3 - Map......................................76

Ex 4 - Surveillance video.......................99

Ex 5 - Excerpt of body-worn camera video........102


--oOo--

--oOo--

BE IT REMEMBERED, that set on Wednesday, the 29th day of April, 2026, commencing at the hour of 9:03 a.m., thereof, DANIEL RAMIREZ, appeared remotely in Los Angeles, California, before me, Kimberly E. D'Urso, an RPR and Certified Shorthand Reporter of the State of California, the following deposition was stenographically reported by me:

(Whereby the Certified Shorthand Reporter introduced herself on the record and administered the oath to the deponent.)

THE VIDEOGRAPHER: Good morning. We're on record at 9:03 a.m. Today's date is April 29th, 2026. This is the recorded remote video deposition of Daniel Ramirez, in the matter of Larios versus City of Los Angeles, Case Number 2:25-cv-07136-MAR.

This deposition is being held via web conference. My name is Said Hofiani. I'm the videographer with Focus Litigation Solutions. The court reporter is Kimberly D'Urso.

Counsel, please introduce yourselves and state whom you represent, after which the court reporter will state her CSR license number and swear in the witness.

MR. SINCICH: Good morning. Marcel Sincich,

the driver from any prior contacts?

A. No.

Q. Did you recognize the vehicle from any prior contacts?

A. No.

Q. Did you recognize -- strike that.

Mr. Larios was the passenger of the vehicle?

A. Yes.

Q. Did you recognize Mr. Larios from any prior contacts?

A. No.

Q. Did one of your partner officers run the license plate of the subject vehicle?

A. I was unaware if they did.

Q. Okay. So you didn't get any information about the vehicle?

A. No.

Q. Regarding Mr. Larios, is it fair to say that you didn't know if he was a resident of the neighborhood?

A. Yes.

Q. He could have lived there, you just didn't know one way or the other?

A. Yes.

Q. How long had you been patrolling that

neighborhood?

A. Around four and a half years, approximate.

Q. Okay. And you had never seen him before; right?

A. No.

Q. But prior to using deadly force, did you know anything about whether or not he had a criminal history?

A. No.

Q. Anything about whether or not he was affiliated with a gang or anything like that?

A. No.

Q. Did you see anything that he was wearing that gave any indication that he was part of a gang?

A. No.

Q. Is it fair to say you didn't know anything about his personal history?

A. Yes.

Q. Did you know anything about his medical history?

A. No.

Q. Did you know anything about whether or not he had ever used drugs or alcohol?

A. No.

Q. And did you know anything about whether or not he was under the influence of drugs or alcohol at the

time?

A. No.

Q. Did you know whether or not the gun was loaded that he had?

A. No.

Q. Do you know the make and model of that gun at all?

A. At the time of the incident, no.

Q. Do you know now?

A. Yes.

Q. What was it?

A. It was a Glock 17.

Q. It's the same as what you have?

A. Yes.

Q. Are you still armed with a Glock 17?

A. Yes.

Q. Is that the standard issue with LAPD right now?

A. No.

Q. What's standard?

A. What they issue right now, I forget.

Q. I thought it used to be the 19.

A. No. They -- they -- it's a different brand.

Q. Oh. You guys maybe moved to SIG or something, huh?

A. No. It's an Army -- Army kind of thing.

BY MR. SINCICH:

Q. When you were watching your body-worn camera, did you ever see him look back at you, prior to him falling?

A. It's hard to say. It was quick. It's -- it's hard to get a good view of the body-worn, but --

Q. Okay. Did Mr. Larios, to your knowledge, physically injure anyone related to this incident?

A. No.

Q. Did you have any information that Mr. Larios had ever physically injured anyone in the past?

A. No.

Q. Did Mr. Larios verbally threaten you or any other officer during this incident?

A. No.

Q. Did you have any information that Mr. Larios verbally threatened anyone in the past?

A. No.

Q. Did you ever hear Mr. Larios verbally threaten a bystander?

A. No.

Q. Other than when you described Mr. Larios pointing the gun at you, did you see Mr. Larios attempt to harm anyone at all?

A. No.

to use deadly force against him?
MR. FORD: Incomplete hypothetical.
You can please answer.
THE WITNESS: No.
BY MR. SINCICH:
Q. And you've had an understanding that there were some posts and marches made, related to this incident?
A. Yes.
Q. Was it your understanding that those posts and marches were conducted because people believed that the shooting of Mr. Larios was unjustified?
MR. FORD: Objection. Calls for speculation.
But go ahead and answer.
THE WITNESS: I don't know why, but I just -- I received notifications that there was marches and protests and signs made of --
MR. SINCICH: Okay. I certainly don't want anybody to threaten you and your life, And I hope that you are safe out there, and hopefully that passed.
I don't have any other questions for you at this time.
THE VIDEOGRAPHER: Going off record at 11:49 a.m.
THE CERTIFIED STENOGRAPHER: Mr. Ford, you're ordering a copy?

MR. FORD: Yes. Not of the video, but I need the transcript.

(11:50 a.m., deposition concluded.)

--oOo--