**HYDEE FELDSTEIN SOTO**, City Attorney (SBN 106866)
**DENISE C. MILLS**, Chief Deputy City Attorney (SBN 191992)
**KATHLEEN KENEALY**, Chief Assistant City Attorney (SBN 212289)
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney (SBN 192872)
**TY A. FORD**, Deputy City Attorney (SBN 218365)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-6900 | Fax No.: (213) 978-8785
Email: Ty.Ford@lacity.org

*Attorneys for Defendants*, CITY OF LOS ANGELES and DANIEL RAMIREZ,

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESMERALDA LARIOS ALVARADO, individually and as successor in interest to ALEXANDER AGUILAR-LARIOS, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, DANIEL RAMIREZ; JIM MCDONNELL; MATTHEW BARRAGAN; FLORENCE YU; ERROLL SOUTHERS; FABIAN GARCIA; MARÍA CALANCHE; RASHA SHIELDS; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:25-cv-07136-MAR<br>*Hon. Mag. Margo A. Rocconi; Roybal – Ctrm. 790*<br><br>**DEFENDANTS MEMORANDUM OF CONTENTIONS OF LAW AND FACT**<br><br>**Final Pretrial Conference**<br>Date November 4, 2026<br>Time: 11:00 A.M.<br>Location: 790<br><br>**Trial**<br>Date: November 16, 2026 |

TO THE HONORABLE COURT, PLAINTIFF AND HER ATTORNEYS OF RECORD:

Defendants **CITY OF LOS ANGELES** and **OFFICER DANIEL RAMIREZ** hereby submit the following Memorandum of Contentions of Fact and Law, pursuant to *Federal Rule of Civil Procedure* 16; United States District Court, Central District of

California Local Rule 16-4, et seq; and the applicable Orders of the Court. Defendants reserve the right to amend this memorandum.

Dated: October 14, 2026

**HYDEE FELDSTEIN SOTO**, City Attorney
**DENISE C. MILLS**, Chief Deputy City Attorney
**KATHLEEN KENEALY**, Chief Assistant City Atty.
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney

By: Ty A. Ford

**TY A. FORD**, Deputy City Attorney
*Attorneys for Defendants*, CITY OF LOS ANGELES and DANIEL RAMIREZ

# MEMORANDUM OF CONTENTIONS OF LAW AND FACT

## I. CLAIMS AND DEFENSES.

### A. Plaintiff's Claims.

Based on the operative complaint and meet and confer discussions with Plaintiff's counsel, Defendants are informed and believes that the following are Plaintiff's claims in this matter:

***Claim 1:*** 42 U.S.C. § 1983 claim under the 4th Amendment for alleged unlawful excessive use of force.

***Claim 2:*** 42 U.S.C. § 1983 claim under the 14th Amendment for alleged denial of familial relationship (substantive due process).

***Claim 6:*** Alleged battery based on California state law.

***Claim 7:*** Alleged negligence based on California state law.

***Claim 8:*** Alleged violation of California Civil Code 52.1 (Bane Act).

Plaintiff's *Claim 3* (42 U.S.C. § 1983 *Monell* claim for Ratification theory), *Claim 4* (*Monell* violation based on Inadequate Training), and *Claim 5* (*Monell* violation based on Unconstitutional Custom or Policy) from the Complaint were dismissed per stipulation (*See* Doc. 23 and 24, August 3, 2026).

### B. Elements For Each Claim.

***Claim 1:*** 42 U.S.C. § 1983 claim under the 4th Amendment for alleged excessive use of force.

1. Defendant Officer Daniel Ramirez's acts were intentional;

2. Defendant Officer Daniel Ramirez acted under color of state law;

3. Defendant Officer Daniel Ramirez unreasonably seized Alexander Aguilar's person by using excessive force against him; and

4. The acts of Defendant Officer Daniel Ramirez were the cause of the deprivation of Alexander Aguilar's rights protected by the Constitution or laws of the United States.

*See* Ninth Circuit Manual of Model Jury Instructions 9.1 (2020), 9.2 (2020), 9.3 (2020) and 9.25 (2020).

***Claim 2:*** 42 U.S.C. § 1983 claim under the 14th Amendment for alleged Interference with Familial Relationship (Substantive Due Process)

1. Officer Daniel Ramirez's conduct deprived Plaintiff of the companionship and society of Alexander Aguilar; and

2. Officer Daniel Ramirez's conduct "shocked the conscience."

*See Ninth Circuit Manual of Model Civil Jury Instructions 9.36.*

To prove that Officer Ramirez's conduct shocked the conscience, Plaintiff must establish one of the following, depending on the circumstances the jury finds existed at the time force was used: (1) If the jury finds Officer Ramirez was required to make a split-second decision where he did not have a practical opportunity for actual deliberation, Plaintiff must prove Officer Ramirez acted with a purpose to harm Alexander Aguilar for reasons unrelated to legitimate law enforcement objectives. *See Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 851 (1998); *Puente v. Cty. of Phoenix*, 159 F.3d 365, 368 (9th Cir. 1998); *Ochoa v. Cty. of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022); or (2) If the jury finds Officer Ramirez had time for actual deliberation before using force, Plaintiff must prove Officer Ramirez acted with deliberate indifference to a known and unreasonable risk of harm. *See Lewis*, 523 U.S. at 851.

***Claim 6:*** Alleged battery by a peace officer (deadly force) based on California state law.

1. Officer Daniel Ramirez intentionally touched Alexander Aguilar or caused him to be touched;

2. That Officer Daniel Ramirez used deadly force on Alexander Aguilar;

3. That Officer Daniel Ramirez's use of deadly force was not necessary to defend human life;

4. That Alexander Aguilar was harmed; and

5. That Officer Daniel Ramirez's use of deadly force was a substantial factor in causing Alexander Aguilar's death.

*See California Civil Jury Instruction (CACI) 1305B.*

***Claim 7:*** Alleged negligence based on California state law.

1. That Officer Daniel Ramirez used force to arrest, detain, prevent the escape of (for a felony that involved the infliction or threatened infliction of death or serious bodily injury), or overcome resistance by name of Alexander Aguilar;

2. That the amount of force used by Officer Daniel Ramirez was unreasonable;

3. That Alexander Aguilar was harmed; and

4. That Officer Daniel Ramirez use of unreasonable force was a substantial factor in causing Alexander Aguilar's harm.

*See CACI 441 and 3921; Hernandez v. Cty. of Pomona*, 46 Cal.4th 501, 513 (2009); *Hayes v. Cnty. of San Diego,* 57 Cal.4th 622, 639 (2013) (holding that pre-shooting tactical conduct may be considered as part of the totality of the circumstances in evaluating negligence arising from the use of deadly force, but only to the extent such conduct bears a causal connection to and informs the reasonableness of the ultimate decision to use lethal force).

***Claim 8:*** Alleged violation of California Civil Code 52.1 (Bane Act)

1. That Officer Daniel Ramirez unreasonably acted violently against Alexander Aguilar to prevent him from exercising his right to be free from excessive force or to retaliate against Alexander Aguilar for having exercised his right to be free from unreasonable force;

2. That Officer Daniel Ramirez intended to deprive Alexander Aguilar of his enjoyment of the interests protected by the right to be free from unreasonable force;

3. That Alexander Aguilar was harmed; and

4. That Officer Daniel Ramirez's conduct was a substantial factor in causing Alexander Aguilar's harm.

*See* California Civil Jury Instructions (CACI) - 3066

**C. Defendants Evidence in Opposition to Each Claim.**

***Claim 1:*** 42 U.S.C. § 1983 claim under the 4th Amendment for alleged excessive use of force.

This matter arises from a fatal officer-involved shooting that occurred on June 11, 2024. On that date, LAPD Officers, including Defendant Officer Daniel Ramirez, were patrolling the San Fernando Gardens Public Housing Complex when they observed Mr. Aguilar enter a black BMW with a fanny pack, which Officers believed from experience to be the type of bag used by gang members to carry and conceal firearms in this area. The Officers followed the vehicle, and then Officer Mata observed Mr. Aguilar exit the vehicle with a handgun in his right hand. Officer Mata yelled "*Gun! Gun! Gun! Gun!*" to his partner officers, Officer Ramirez and Officer Cervantes.

Mr. Aguilar began to run into the housing complex, which consisted of numerous buildings. Officer Ramirez exited the LAPD vehicle and began to run after Mr. Aguilar, and was soon followed by Officers Mata and Cervantes on foot. As he followed Mr. Aguilar behind a purple van, Officer Ramirez observed that Mr. Aguilar remained armed, and Officer Ramirez unholstered his service pistol. Fearing that he could be shot by Mr. Aguilar, Officer Ramirez pointed his firearm in the direction of Mr. Aguilar, as they both continued in the foot pursuit at a distance of approximately 30 feet separating them. Mr. Aguilar continued to run in a southeast direction, and Officer Ramirez yelled to him, "*Stop or I'll shoot you!*" Mr. Aguilar continued running and then stumbled on a concrete pad, and his body rotated counterclockwise in the direction of Officer Ramirez while still holding his gun. Mr. Aguilar then rolled on his hip area, braced his fall with his right arm, and then regained his balance while still gripping his handgun.

Officer Ramirez reasonably perceived that Mr. Aguilar was pointing his firearm at him and intended to shoot him. By the time Mr. Aguilar regained his footing, he was

approximately 14 feet from Officer Ramirez, still holding the handgun. Based on the totality of the circumstances, Officer Ramirez fired four rounds in a time period of 1.04 seconds towards Mr. Aguilar, and between each round, Officer Ramirez reasonably believed Mr. Aguilar posed a continuous threat of death or serious bodily injury. Mr. Aguilar was struck by one round in his back, fell to the ground, and dropped his firearm. Officer Ramirez then ceased firing his handgun. Mr. Aguilar was treated at the scene by LAFD paramedics and transported to the hospital, where he was pronounced dead. Mr. Aguilar's firearm was located in the grass and found to have been loaded.

These facts will be established through testimony of witnesses, Officers' body-worn video, surveillance video, still photographs from the scene, evidentiary photographs, audio recordings (e.g., 911, LAPD radio traffic), and expert witness testimony.

***Claim 2:*** 42 U.S.C. § 1983 claim under the 14th Amendment for alleged Interference with Familial Relationship (Substantive Due Process).

Defendants believe that the same evidence set forth above under Claim No. 1 supports their contention that Defendants are not liable under this claim.

***Claim 6:*** Alleged battery by a peace officer based on California state law.

Defendants believe that the same evidence set forth above under Claim No. 1 supports their contention that Defendants are not liable under this claim.

***Claim 7:*** Alleged negligence based on California state law.

Defendants believe that the same evidence set forth above under Claim No. 1 supports their contention that Defendants are not liable under this claim.

***Claim 8:*** Alleged violation of California Civil Code 52.1 (Bane Act).

Defendants believe that the same evidence set forth above under Claim No. 1 supports their contention that Defendants are not liable under this claim.

**D. Defendants Counterclaims And Affirmative Defenses.**

*First Affirmative Defense:* Qualified Immunity (federal)

*Second Affirmative Defense:* Qualified Immunities (state)

Cal. Gov. Code, § 815.2(b): Injuries by Employee within Scope of Employment; Immunity of Employee

Cal. Gov. Code, § 820.2: Discretionary Acts

Cal. Gov. Code,§ 820.4: Execution or Enforcement of Laws

Cal. Gov. Code, § 820.8: Acts or Omissions of Others

*Third Affirmative Defense:* Self-Defense/Defense of Others

*Fourth Affirmative Defense:* Contributory Negligence

**E. Elements To Affirmative Defenses.**

***First Affirmative Defense:*** *Qualified Immunity*

1. Whether Defendant's alleged conduct violated a constitutional right.

2. If a constitutional right was violated, whether the constitutional right was "clearly established."

*See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009).

***Second Affirmative Defense:*** *Qualified Immunities (state)*

1. Cal. Gov. Code, § 815.2(b): Injuries by Employee within Scope of Employment; Immunity of Employee.

If the employee is immune from liability, Defendant City of Los Angeles also is immune from liability.

2. Cal. Gov. Code, § 820.2: Discretionary Acts.

An employee of Defendant City of Los Angeles was exercising the discretion vested in him/her.

3. Cal. Gov. Code,§ 820.4: Execution or Enforcement of Laws

An employee of Defendant City of Los Angeles is not liable for his act or omission, exercising due care, in the execution or enforcement of any law.

4. Cal. Gov. Code, § 820.8: Acts or Omissions of Others.

An employee of Defendant City of Los Angeles cannot be held liable for an injury caused by the act or omission of another person.

***Third Affirmative Defense:*** *Self-Defense/Defense of Others.*

1. That Officer Daniel Ramirez reasonably believed that Alexander Aguilar was going to harm himself or others.

2. That Officer Daniel Ramirez used only the amount of force that was reasonably necessary to protect themselves or others.

*See* California Civil Jury Instructions (CACI) – 1304.

***Fourth Affirmative Defense:*** Contributory Negligence by Plaintiff.

1. That Alexander Aguilar was negligent.

2. That Alexander Aguilar's negligence was a substantial factor in causing his harm.

*See* California Civil Jury Instructions (CACI) – 2904

**F. Defendants Evidence In Support Of Each Affirmative Defense.**

Defendants believes that the same evidence set forth above under Claim Nos. 1 through 8 above support their affirmative defenses in this matter. Defendants contend that the evidence identified above in support of their defenses to Claim Nos. 1, 2, 6, 7, and 8 likewise supports each of the affirmative defenses asserted in this action. The same testimonial, documentary, and demonstrative evidence establishes that Officer Garcia's conduct was lawful, reasonable, and justified under the circumstances, and defeats Plaintiffs' claims.

**G. Evidentiary Issues.**

Defendants do not believe that they will have any evidentiary problems with their defenses. However, Defendants believe Plaintiff may have evidentiary problems with her claims, as she may try to introduce hearsay, irrelevant and other inadmissible evidence to support her claims.

///

///

///

///

### H. <u>Issues of Law.</u>

#### 1. <u>Defendant Officer Ramirez Did Not Violate Plaintiff's Constitutional Rights And Is Entitled To Qualified Immunity.</u>

Even assuming the Officer's conduct constituted a use of excessive force (which it does not), Plaintiff's federal claims against Officer Ramirez still fail because the Officer is entitled to qualified immunity.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable Officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (*citing Terry v. Ohio,* 392 U.S. 1, 20-22 (1968)). In addition, the consideration of "reasonableness must embody allowance for the fact that police Officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-397 (1989). Police Officers are entitled to use deadly force when they have "probable cause to believe that the suspect poses a threat of serious physical harm, either to the Officer or to others." *Tennessee v. Garner*, 471 U.S. 8, 11 (1985). An Officer may reasonably use deadly force when he confronts a suspect whose actions indicate a threat to the Officer's life or the lives of others. The courts cannot ask Officers to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the Officer. "[T]he Fourth Amendment does not require" a police Officer to be "omniscien[t], and absolute certainty of harm need not precede [an Officer's] act of self-protection." *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010). Under these tense and rapidly evolving moments, reasonable police Officers are entitled to use deadly force to stop a threat to their lives and/or the lives of others. *See Graham, supra*, 490 U.S. at 396-97.

Defendant Officer Ramirez also is entitled to qualified immunity since he did not violate Plaintiff's or the Decedent's Fourth and Fourteenth Amendment rights and his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982). Qualified immunity is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions. *See Wyatt v. Cole*, 504 U.S. 158, 167-68 (1992). Qualified immunity "spare[s] police Officer not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). It is an "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As a result, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. Id. at 201 (*quoting Hunter, supra*, 502 U.S. at 227).

Qualified immunity balances "two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes." *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017). Qualified immunity protects officials "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting incompetent or those *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). "If the Officer's mistake as to what the law requires is reasonable . . . the Officer is entitled to the immunity defense." *Saucier, supra,* at 205. The Ninth Circuit also has held that a police Officer is entitled to qualified immunity if a reasonable Officer could have believed, even mistakenly so, that the Officer's actions were justified so long as the Officer's conclusion is objectively reasonable. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993); *Franklin v. Fox*, 312 F.3d 423, 439 (9th Cir. 2002).

There are two prongs to the qualified immunity analysis. The courts may exercise their discretion in deciding which prong to analyze first under the facts of the

case at bar. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The first inquiry is whether, taken in the light most favorable to the non-moving party, the facts alleged show that the Officer's conduct violated a constitutional right. *See Saucier, supra,* 533 U.S. at 201. Where the alleged conduct does not violate a constitutional right, the Officer is entitled to qualified immunity. *Id.* The law is clear that an Officer may use deadly force to apprehend a suspect where the suspect poses an immediate threat to the Officer or others. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985). To succeed on a Section 1983 action against a defendant in his individual capacity, the plaintiff must present specific facts linking the individual defendant to a constitutional violation. *See Ortez v. Washington County*, 88 F.3d 804, 809 (9th Cir. 1978).

Under the first prong, Defendants Officer Ramirez is entitled to qualified immunity because he did not violate Plaintiff's constitutional rights by using deadly force against him. Plaintiff cannot present any specific facts linking the Defendant Officer to a constitutional violation.

Under the second prong, the Court must determine whether the conduct violated a "clearly established statutory or constitutional right of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir. 1989). Police Officers are presumed to be protected by qualified immunity. *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). The plaintiff bears the burden of proving that the constitutional right allegedly violated was clearly established at the time of the alleged incident. *See Cohen v. San Bernardino Valley College*, 92 F.3d 968, 973 (9th Cir. 1996).

"To overcome this presumption [of qualified immunity protection], a plaintiff must show that the Officer's conduct was 'so egregious that any reasonable person would have recognized a constitutional violation.'" *Id.* [internal citations omitted]. The standard is a demanding one.

The contours of a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Thus, the standard is *not* whether clearly established law supported an Officer's actions, rather it is whether an Officer's conduct was *prohibited by* clearly established law. This line of inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition . . .," with the focus being on "whether it would be clear to a reasonable Officer that his conduct was unlawful in the situation he confronted." *Saucier, supra*, 533 U.S. at 201. The courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft, supra*, at 741. "'[C]learly established' also should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017). "Clearly established" must be particularized to the facts of the case and "in light of the pre-existing law the unlawfulness must be apparent". *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Defendant Officer Ramirez is entitled to qualified immunity under the second prong because it was not clearly established at the time of the incident that his conduct in regards to the Decedent, who posed an imminent threat to the safety of Officers and others, was prohibited by the law.

**2. The deadly force used by Office Ramirez was not unreasonable under the totality of the circumstances and was necessary to defend human life; the negligence and Bane Act claims also fail.**

Plaintiff alleges that Mr. Aguilar's Fourth Amendment rights and her Fourteenth Amendment rights were violated when Defendants shot him. Fourth Amendment deadly use-of-force claims are analyzed under the standard of objective reasonableness as first explained in *Graham v. Connor*, 490 U.S. 386, 397 (1989). Plaintiff has the burden of proof in establishing excessive force. *See Graham*, 490 U.S. 386. To succeed on a Section 1983 action against a defendant in his individual capacity, the plaintiff must present specific facts linking the individual defendant to a constitutional

violation. *See Ortez v. Washington County*, 88 F.3d 804, 809 (9th Cir. 1978). Accordingly, Plaintiff cannot lump the defendants together as one, but rather must prove that each Officer separately used unreasonable force against him and violated his Fourth Amendment rights. *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996) [rejecting a "team effort" standard and requiring each individual's liability to be based on that individual's own conduct]. As explained below, the undisputed evidence shows that each Officer's use of deadly force was objectively reasonable under the totality of the circumstances.

The overarching standard is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them" as defined in *Graham*, 490 U.S. at 397, and its progeny. *See Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396 (*citing Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). In addition, the consideration of "reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97. Officers also must be allowed to make "commonsense judgments and inferences about human behavior." *Kansas v. Glover*, 140 S. Ct. 1183 (2020).

Police officers are entitled to use deadly force when they have "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 8, 11 (1985). Police officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety. . ." *U.S. v. $109,179,* 228 F.3d 1080, 1084 (9th Cir. 2000); *see also Washington v. Lambert,* 98 F.3d 1181, 1186 (9th Cir. 1996); *Terry,* 392 U.S. at 22–24 [opining that "we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an

arrest."]. Thus, an Officer may reasonably use deadly force when he confronts a suspect whose actions indicate a threat to the Officer's life or the lives of others. "[T]he Fourth Amendment does not require" a police Officer to be "omniscien[t], and absolute certainty of harm need not precede [an officer's] act of self-protection." *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010). According to these guiding principles, the courts cannot ask officers to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the Officer or others.

Under the applicable principles, whether the Officer could or should have done something different under the circumstances is irrelevant. Police Officers are not required to use the least intrusive degree of force or that least likely to cause harm, rather the inquiry is whether the force that was used was within the range of reasonable conduct when viewing the facts and circumstances from the perspective of a reasonable officer on the scene. *See Graham,* 490 U.S at 396-397. As such, the only relevant question is whether their use of force was *within the range* of reasonable conduct in response to the circumstances. *Id*. [emph. added]. The intrusion on the person must be balanced against the governmental interests at stake. *Id*. One factor the courts consider in assessing reasonableness is whether the suspect was actively resisting the Officer's authority. *See Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). The facts are viewed from the perspective of a reasonable officer at the time the incident was unfolding, but the analysis excludes the involved officer's subjective intentions. *Graham,* 490 U.S at 396-97. A plaintiff's subjective interpretation of the officer's conduct also is irrelevant in determining reasonableness. *Id*.

In *Buchanan v. City of San Jose*, 782 F. App'x 589, 591 (9th Cir. 2019), the officers responded to a 911 (later determined to be false) about a man threatening his family with a knife. When the officers arrived, the observed the suspect outside with a knife and standing next to two women. The suspect walked towards the officers in a threatening manner, and when they ordered him to stop, he accelerated his pace towards them. The officers then fired the weapons fatally wounding the suspect. The *Buchanan*

court found that the officers did not use excessive force and that the officers were entitled to summary judgment. The court also reasoned that, "Had the officers waited 1 to 1.5 seconds more before firing when they did, Watkins would have reached them with the knife before falling to the ground." *Id*. at 591.

Likewise, Police Officers in California may use reasonable force, in self-defense or defense of others, while in the commission of their duties because unlike private citizens, they act under color of law to protect the public interest. *See Brosseau v. Haugen*, 543 U.S. 194,197-98 (2004); Cal. Pen. Code § 835(a). Accordingly, they are permitted to use such force as is "objectively reasonable" under a totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable Officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "[R]easonableness must embody allowance for the fact that police Officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Id.* at 396-97. To evaluate the reasonableness of an Officer's use of force, courts must pay "careful attention to the facts and circumstances of a particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the Officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Under state tort law, a battery is a "violation of an individual's interest in freedom from intentional, unlawful, harmful or offensive unconsented contacts with his or her person." *Rains v. Superior Court*,150 Cal.App.3d 933, 938 (1984). Critically, a plaintiff bringing a battery claim against police must additionally prove that they used unreasonable force; *see also Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272-73

(1998). The rationale is that Officers are "charged with acting affirmatively and using force as part of their duties[] because the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (quoting *Graham*, 490 U.S. at 396) (internal quotations omitted). To prevail on a state law battery claim against a police Officer, a plaintiff must establish that: (1) the Officer intentionally touched plaintiff or caused plaintiff to be touched; (2) the Officer used unreasonable force on the plaintiff; (3) plaintiff did not consent to the use of that force; (4) plaintiff was harmed; and (5) the Officer's use of unreasonable force was a substantial factor in causing plaintiff's harm. *See* CACI No. 1305A.

A negligence claim requires evidence that a breach of a duty of care was the proximate or legal cause of a plaintiff's injury. *See Lopez v. City of Los Angeles*, 196 Cal.App.4th 675, 687 (2011). To determine whether an Officer committed such a breach requires the court to analyze whether the use of force was objectively reasonable. *Id.* at 689. In this regard, police may use reasonable force to "make an arrest, prevent escape over overcome resistance, and need not desist in the face of resistance." *Id.* (*quoting Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2011)).

Claim 8 is asserted under California Civil Code section 52.1, also known as the Bane Act. This statutory provision prohibits a person from interfering or attempting to interfere "by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). "There are two distinct elements for a section 52.1 cause of action. A plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

In *Cornell v. City and Cnty. of San Francisco*, 17 Cal. App. 5th 766 (2017), the

court explained that "[p]roperly read, the statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." Id. at 800. Accordingly, the court held that "the egregiousness required by section 52.1 is tested by whether the circumstances indicate the arresting Officer had a specific intent to violate the arrestee's rights." Id. at 801. In so holding, *Cornell* adopted the specific intent standard established in *Screws v. United States*, 325 U.S. 91 (1945), for assessing criminal violations of federal civil rights. *See Cornell*, 17 Cal. App. 5th at 802. In light of the *Cornell* decision, the Ninth Circuit has adopted the specific intent standard for Bane Act claims. *See Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). Here, Plaintiff does not have evidence that Officer Ramirez had a specific intent to violate her or the Decedent's constitutional rights. *See Cornell*, 17 Cal.App.5th at 901-02

Here, Plaintiff's excessive force, substantive due process, battery, negligence, and Bane Act claims (Claims 1, 2, 6, 7, and 8) are premised on her contentions that the Officer Ramirez's use of deadly force was unreasonable under the totality of the circumstances. Under the undisputed evidence, the Decedent was armed with a loaded firearm, had been commanded to stop, refused to do so, and continued to flee in a densely-populated housing complex. It is also undisputed that the Decedent at one point faced Officer Ramirez with the loaded pistol in his hand, and it was only after that point that Officer Ramirez used deadly force. In addition, pursuant to California Penal Code § 25850, it was a felony for the Decedent to brandish and carry a loaded firearm. and Plaintiff was attempting to flee at the time of the use of deadly force. There is absolutely no evidence that Officer Ramirez intended to violate Mr. Aguilar's or Plaintiff's rights, or that Officer Ramirez's actions were not related to a legitimate law enforcement purpose. Officer Ramirez's actions do not shock the conscience. Based on all these facts, Officer Ramirez's use of deadly force was necessary to defend human life and reasonable under the totality of these circumstances and each of Plaintiff's

claims fail.

## II. TRIFURCATION OF ISSUES (L.R. 16-4.3)

Defendants respectfully request that trial be trifurcated pursuant to Federal Rule of Civil Procedure 42(b), with liability tried separately from compensatory damages (Phases I and II), and any claim for punitive damages, if necessary, tried in Phase III. Trifurcation will promote judicial economy, eliminate prejudicial evidence that might affect the jury's decision, and avoid the unnecessary presentation of evidence concerning the Defendant's financial condition and net worth unless and until the jury first determines that punitive damages are warranted. Plaintiffs have indicated they have no opposition to bifurcation of punitive damages but they do not agree to bifurcation.

## III. JURY TRIAL.

Defendants contend that the issues in this case are appropriate for a jury trial, and that a jury trial has been properly requested.

## IV. ATTORNEYS' FEES.

The prevailing party on the federal claims may be entitled to recover attorney's fees under 42 U.S.C. § 1988.

## V. ABANDONMENT OF ISSUES.

Defendants have not abandoned any of their defenses, and reserve their right to assert further defenses or abandon any defenses as Plaintiff's contentions become known.

Plaintiffs have previously dismissed their *Claim 3 (*42 U.S.C. § 1983 *Monell* claim for Ratification theory), *Claim 4* (*Monell* violation based on Inadequate Training), and *Claim 5* (*Monell* violation based on Unconstitutional Custom or Policy) from the Complaint were dismissed per stipulation with prejudice (*See* Doc. 23 and 24, August 3, 2026). Plaintiffs have previously dismissed all claims against Defendants JIM MCDONNELL, MATTHEW BARRAGAN, FLORENCE YU, ERROLL SOUTHERS, FABIAN GARCIA, MARÍA CALANCHE, and RASHA SHIELDS with prejudice. *See Id.*

## VI. CONCLUSION.

Defendants reserve the right to supplement those contentions as the Court's rulings, Plaintiff's contentions, and/or other evidence, becomes known to Defendants.

Dated: October 14, 2026

**HYDEE FELDSTEIN SOTO**, City Attorney
**DENISE C. MILLS**, Chief Deputy City Attorney
**KATHLEEN KENEALY**, Chief Assistant City Atty.
**CHRISTIAN R. BOJORQUEZ**, Deputy City Attorney

By: Ty A. Ford
**TY A. FORD**, Deputy City Attorney
*Attorneys for Defendants*, CITY OF LOS ANGELES and DANIEL RAMIREZ