**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESMERALDA LARIOS ALVARADO,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, and DANIEL RAMIREZ,<br><br>Defendants. | Case No.: 2:25-cv-07136-MAR<br>[*Honorable Mag. Margo A. Rocconi*]<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>**<u>Final Pre-Trial Conference</u>**<br>Date: November 4, 2026<br>Time: 11:00 a.m.<br>**<u>Jury Trial</u>**<br>Date: November 16, 2026<br>Time: 09:00 a.m.<br><br>Ctrm: Roybal – Ctrm. 790 |

## TABLE OF CONTENTS


I. INTRODUCTION: 5

II. CONTENTIONS OF FACT: 5

III. PLAINTIFF'S CLAIMS: 8

A. Elements and Legal Contentions 8

1. Claim 1: Excessive Force (42 U.S.C. §1983). 8

2. Claim 2: Battery by a Peace Officer (Deadly Force). 11

3. Claim 3: Negligent Use of Deadly Force by a Peace Officer. 13

4. Claim 4: Violation of the Bane Act (Cal. Civ. Code §52.1). 15

B. Plaintiff's Key Evidence to Support Their Claims 16

IV. ANTICIPATED EVIDENTIARY ISSUES: 17

V. BIFURCATION OF ISSUES: 18

VI. THE TRIAL IS BY JURY: 19

VII. ATTORNEYS' FEES 19

VIII. ABANDONMENT OF ISSUES: 19

# TABLE OF AUTHORITIES

Cases

*Bender v. Cnty. of Los Angeles*, 217 Cal. App. 4th 968 (2013) ....... 21

*Brown v. Ransweiler*, 171 Cal.App.4th 516 (2009) ....... 17

*Bryan v. McPherson*, 630 F.3d 805 (9th Cir. 2010) ....... 10

*Cameron v. Craig*, 713 F.3d 1012 (9th Cir. 2013) ....... 21

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014) ....... 21

*Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766 (2017) ....... 22

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) ....... 10, 11

*Glenn v. Washington*, 673 F.3d 864 (9th Cir. 2011) ....... 10

*Graham v. Connor*, 490 U.S. 386 (1989) ....... 10

*Headwaters v. County of Humboldt*, 240 F.3d 1185 (9th Cir. 2000) ....... 11

*John R. v. Oakland Unified School Dist.*, 48 Cal. 3d 438 (1998) ....... 17

*Knapps v. City of Oakland*, 647 F. Supp. 2d 1129 (N.D. Cal. 2009) ....... 21

*LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000) ....... 12

*Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003) ....... 10

*Moreland v. Las Vegas Metro. Police Dep't.*, 159 F.3d 365 (9th Cir. 1998) ....... 13, 15, 16

*Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004) ....... 17

N.E.M. v. City of Salinas, 761 F. App'x 698 (9th Cir. 2019) ....... 12

*Nelson v. City of Davis*,
685 F.3d 867 (9th Cir. 2012) .......... 10

*Reese v. County of Sacramento*,
888 F.3d 1030 (9th Cir. 2018) .......... 21, 22

*Santos v. Gates*,
287 F.3d 846 (9th Cir. 2002) .......... 10

*Scott v. Harris*,
550 U.S. 372 (2007) .......... 10

*Simmons v. Superior Court*,
7 Cal. App. 5th 1113 (2017) .......... 21

*Smith v. City of Hemet*,
394 F.3d 689 (2005) .......... 11

*Smith v. City of Hemet*,
394 F.3d 689 (9th Cir. 2005) .......... 10

*Tan Lam v. City of Los Banos*,
976 F.3d 986 (9th Cir. 2020) .......... 12

*Tennessee v. Garner*,
471 U.S. 1 (1985) .......... 10, 11

*Yount v. City of Sacramento*,
43 Cal. 4th 885 (2008) .......... 17

<u>Statutes</u>

42 U.S.C. §1983 .......... 5

42 U.S.C. §1988 .......... 5, 25

Cal. Civ. Code §52(b) .......... 25

Cal. Civ. Code §52.1 .......... 21

Cal. Code Civ. Proc. §1021.5 .......... 25

Cal. Gov. Code §815.2(a) .......... 17

Cal. Gov. Code §820(a) .......... 17

Judicial Council of California Civil Jury Instructions, No. 1305B .......... 18, 19

Judicial Council of California Civil Jury Instructions, No. 3066 .......... 22

Judicial Council of California Civil Jury Instructions, No. 441 .......... 20, 21

**TO THIS HONORABLE COURT, AND TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD HEREIN:**

Pursuant to Local Rule 16-4 and the Court's Order re: Jury Trial (Doc. 32), Plaintiff hereby submits the following Memorandum of Contentions of Fact and Law. Plaintiff reserves the right amend pending the Court's order on the parties' motions *in limine*.

## I. <u>INTRODUCTION</u>:

This 42 U.S.C. §1983 civil rights action arises from the excessive and unreasonable force of Decedent Alexander Aguilar-Larios by City of Los Angeles Police Department Officer Daniel Ramirez who was accompanied by his partners, Officers David Cervantes and Rolando Mata, on June 11, 2024. Plaintiff seeks compensatory damages, punitive damages, reasonable costs, attorneys' fees under 42 U.S.C. §1988, and any other relief that this Court deems appropriate.

## II. <u>CONTENTIONS OF FACT</u>:

On Tuesday, June 11, 2024, at about 8:45 p.m., Los Angeles Police Department Officers Daniel Ramirez, Rolando Mata, and David Cervantes, were patrolling the San Fernando Gardens Public Housing Complex. Officer Ramirez said he was in a patrol vehicle with Officer Mata and Officer Cervantes, and they saw a subject later identified as Alexander Aguilar-Larios in a black BMW parked in the housing complex. The BMW pulled out of the parking stall, turned north on Lehigh Avenue, and drove past the officers' vehicle. Officer Cervantes, who was driving the patrol vehicle, made a U-turn and followed the BMW allegedly to see the license plate so they could conduct a want/warrant check. Officers claim that the BMW accelerated north on Lehigh Avenue and failed to stop for a stop sign at Carl Street. The BMW then turned west on Carl Street and then south onto Carl Place.

The officers caught up to the BMW as it turned south on Carl Place. The driver of the BMW pulled to the east curb and Officer Cervantes stopped the police vehicle

approximately five feet behind it. Officer Mata, the front passenger of the patrol vehicle, activated the passenger side spotlight, illuminating the passenger side of the BMW. Mr. Larios then opened the front passenger door, exited, and ran south on Carl Place. According to Officer Mata, he attempted to broadcast their Code Six location; however, the frequency was occupied. Officer Cervantes said he intended to activate the lights and siren to conduct a traffic stop; however, claims that Mr. Larios exited the vehicle before he could do so.

According to Officer Mata, as Mr. Larios exited the vehicle, he saw that Mr. Larios was armed with a handgun in his right hand. Officer Mata immediately dropped the vehicle's microphone, exited the police vehicle, and shouted, "Gun, gun, gun, gun!" to his partners as he began to follow Mr. Larios (Officer Mata's BWC Video's audio does not begin until after he has begun the foot pursuit and his statements at the police vehicle were not recorded). As Officer Mata passed the BMW, he observed the driver and believed there may be additional occupants in the vehicle, but he continued following Mr. Larios.

Officer Ramirez exited the rear left passenger door simultaneously to Officer Mata announcing "Gun," and he ran south along the driver's side of the BMW. According to Officer Ramirez, he focused on Mr. Larios and did not clear the BMW for other occupants as he passed it. Approximately one second after Officer Ramirez exited, Officer Cervantes placed the police vehicle in park, removed the ignition key, and joined the foot pursuit.

According to Officer Cervantes, as he passed the BMW, he unholstered his pistol and cleared the vehicle. After determining that the sole occupant (driver) was not armed, Officer Cervantes holstered his pistol and continued the foot pursuit. Approximately 20 seconds after Officer Cervantes cleared the BMW, the driver fled in the vehicle and headed east on Carl Place and then north on Lehigh Avenue.

The officers followed Mr. Larios southwest on Carl Place, with Officer Ramirez taking the lead. As Officer Mata ran, he claimed his BWV camera fell to the

ground. Simultaneously, he broadcast, "George 21, we are going to be in foot pursuit of a 415 man with a gun. Southbound through the projects! We're going southbound toward Carl Place!" Officer Cervantes, who was following approximately 50 feet behind, holstered his pistol and recovered Officer Mata's BWV camera. Officer Cervantes held it in his right hand while maintaining his police radio in his left hand as he continued to follow his partners.

Mr. Larios ran south with Officer Ramirez following approximately 34 feet behind. Officer Ramirez said he saw that Mr. Larios armed with the handgun, so he unholstered his pistol. Officer Ramirez did not shoot Mr. Larios while he was running because Mr. Larios was not an imminent threat. As Mr. Larios continued running, Officer Ramirez lowered his pistol and continued following him.

Mr. Larios ran across a grass area between a single-story multi-unit residential building and a green cinderblock wall that ran parallel to Carl Place. As the officers continued in foot pursuit, Officer Ramirez followed approximately 30 feet behind Mr. Larios. Officer Mata was approximately 30 feet behind Officer Ramirez and Officer Cervantes followed behind Officer Mata.

Leading to the south side of building, Mr. Larios began to lose his balance and stumbled onto a concrete pad and, in doing so, rotated counterclockwise. In a continuous motion, Mr. Larios landed on his right hip and continued to roll onto his buttock, then onto his left knee with his right foot planted on the ground. Mr. Larios immediately stood up and he began moving northeast – away from Officer Ramirez. Officer Ramirez was approximately 33 feet behind when Mr. Larios stumbled onto the concrete pad. As Mr. Larios rolled on the ground, Officer Ramirez raised his pistol in a one-handed grip and slowed down. Officer Ramirez was now approximately 14 feet away as Mr. Larios regained his footing, holding his handgun in front of him at a downward angle with his right hand. With Mr. Larios's left side facing him, Officer Ramirez opened fire.

Mr. Larios released and discarded the handgun behind him, with his back and left side facing Officer Ramirez. Then Officer Ramirez fired his third round. Mr. Larios remained standing but was falling to the ground, and he brought his right hand back toward his torso as the handgun drifted in the air behind him clearly not in his visibly empty hands, and Officer Ramirez fired his last round.

Officer Ramirez fired four rounds from a decreasing distance of 14 to 11 feet. Officer Mata and Officer Cervantes did not see the shooting. Mr. Larios died from a single gunshot wound. The projectile entered Mr. Larios's left lower back, perforated the aorta and a large vein (inferior vena cava), caused a fracture of the fourth lumbar vertebra, and perforated the right kidney. The bullet traveled from left to right, back to front, and upward. A copper-colored projectile was recovered from the muscles of Mr. Larios's right back. There was no exit wound.

At the time of the shooting and immediately before, Mr. Larios never pointed the gun at any person; Mr. Larios never attempted to harm any person; Mr. Larios never verbally threatened to harm any person; Mr. Larios never ran towards any person; Mr. Larios never attempted to grab, punch, kick, or strike any person; Mr. Larios never attempted to take a hostage; Mr. Larios never attempted to go into any person's vehicle or home; Mr. Larios was not looking at Officer Ramirez; Mr. Larios was not facing Officer Ramirez; Mr. Larios discarded the gun and was falling to the ground, yet Officer Ramirez shot him dead.

## III. <u>PLAINTIFF'S CLAIMS</u>:

### A. Elements and Legal Contentions

#### 1. <u>Claim 1: Excessive Force (42 U.S.C. §1983)</u>

Plaintiff contends that Defendant Ramirez used excessive force when he repeatedly shot Larios, including to the back, and after he dropped the gun, as he fell to the ground, was not aggressive, not assaultive, and not an immediate threat of death or serious bodily injury. Defendant Ramirez acted under the color of state law

and within the course and scope of his employment with Defendant State during the incident.

The law governing the use of deadly force is well established. "[A] Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007). The reasonableness of any seizure is determined by "'careful[ly] balancing ... the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) ("Whether an otherwise valid search or seizure was carried out in an unreasonable manner is determined under an objective test, on the basis of the facts and circumstances confronting the officers"). The analysis must "'balance the amount of force applied against the need for that force.'" *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). "[A]ll force—lethal and non-lethal—must be justified by the need for the specific level of force employed." *Id.* at 825. Even where some force is justified, the amount used may be excessive. *Santos v. Gates*, 287 F.3d 846, 853-54 (9th Cir. 2002). Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, (4) the availability of alternative methods to effectuate an arrest or overcome resistance, *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), and (5) the giving of a warning prior to the use of force, *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012). *See Glenn v. Washington*, 673 F.3d 864, 872 (9th Cir. 2011); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001). The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly force also frustrates

the interest of the individual, and of society, in judicial determination of guilt and punishment. *Garner*, 471 U.S. at 9. The "most important" factor is whether the plaintiff posed an immediate threat to the safety of the officers or others. *Bryan*, 630 F.3d at 826. Here, Larios was not an immediate threat of safety to any person, and Ramirez also used deadly force on Larios who was obviously not an immediate threat of death or serious bodily injury to any person.

Another factor to consider is the availability of alternative methods to effectuate an arrest or overcome resistance. *Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (en banc). "[P]olice are 'required to consider what other tactics if any were available to effect the arrest.'" *Headwaters v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000). Police officers are trained to provide warnings prior to using force where feasible, even when the force is less than deadly, and the failure to give such a warning is a factor to consider in determining whether the force was excessive. *See Deorle*, 272 F.3d at 1284. In the context of deadly force, "whenever practicable, a warning must be given before deadly force is employed." *Harris*, 126 F.3d at 1201. Here, Ramirez did not provide an adequate warning to Larios that any force would be used even though they had the opportunity to do so.

Further, the Ninth Circuit recently affirmed the long-standing principle that even if force was reasonable at one point, once the subject is no longer a threat, additional force is unreasonable. *See generally Tan Lam v. City of Los Banos*, 976 F.3d 986, 1001 (9th Cir. 2020); *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000); *Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017). "A desire to resolve quickly a potentially dangerous situation" does not justify the use of force. *Deorle*, 272 F.3d at 1281.

Further, the law was clearly established at the time of the incident that the use of force under these circumstances violates the Constitutional rights of Larios. *See C.V. v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016); *Aguirre v. County of Riverside*, 29 F.4th 624, 626-29 (9th Cir. 2022); *Zion*, 874 F.3d at 1075-76; *Tan*

*Lam v. City of Los Banos*, 976 F.3d 986, 1001 (9th Cir. 2020); *Lopez*, 871 F.3d at 1006-13; *George*, 736 F.3d at 838; *Harris*, 126 F.3d 1189, 1203-04; *Curnow*, 952 F.2d at 325; *Hayes*, 736 F.3d at 1227-28; *Cruz v. City of Anaheim*, 765 F.3d 1076, 1077-78 (9th Cir. 2014).

Plaintiff seeks compensatory damages for the violation of his rights, costs, punitive damages, and reasonable attorneys' fees under this claim.

Elements of Excessive Force:

1. Defendant Ramirez acted under color of state law. (UNDISPUTED)
2. Defendant Ramirez used excessive force against Larios.
3. Defendant Ramirez's use of excessive force was a substantial factor in causing harm, injury, or damage to Larios.

Source: Ninth Circuit Manual of Model Jury Instructions, Nos. 9.3 and 9.27 (2026 Edition).

2. Claim 2: Substantive Due Process—Unlawful Interference with Parent/Child Relationship (42 U.S.C. §1983)

Plaintiff contends that Defendant Ramirez unlawfully interfered with her right to a familial relationship with Larios. The use of deadly force against Larios violated Plaintiff's Fourteenth Amendment substantive due process right to freedom from unlawful interference with her individual familial relationship with Larios. It shocks the conscience that Defendant Ramirez used deadly force against Larios, after Larios dropped the gun, was falling to the ground, never threatened anyone, and was not an immediate threat of death or serious bodily injury to any person. Defendant Ramiez had time to deliberate, plan, analyze, and determine the appropriate level of force, if any. This was not a snap judgment. Further, after Defendant Ramiez first shot, they admit to having assessed between shots, therefore a reasonable jury could find that Ramirez knew Larios was unarmed and continued to open fire.

The Ninth Circuit has recognized that parents have Fourteenth Amendment liberty interest in the companionship and society of their children. *See Wilkinson v.*

*Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "Official conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process. *Id*. Official conduct "shocks the conscience" where an officer acts with a purpose to harm unrelated to a legitimate law enforcement objective or, if actual deliberation is practical, where the officer acts with deliberate indifference.

Plaintiff seeks wrongful death damages for the loss of Larios' love, companionship, comfort, care, assistance, protection, affection, society, and moral support (see CACI 3921) costs, and attorneys' fees under federal law on this claim.

Elements of Interference with Familial Relationship:

1. Defendant Officers acted under color of state law.

2. A Defendant Officer acted with deliberate indifference to Larios' rights.

Source: Ninth Circuit Manual of Model Civil Jury Instructions (2026 Edition), No. 9.32 (*modified*); *Wilkinson v. Torres*, 601 F.3d 546, 554 (9th Cir. 2010); *Porter v. Osborn*, 546 F.3rd 1131, 1136-37 (2009); *Moreland v. Las Vegas Metro. Police Dep't.*, 159 F.3d 365, 372-73 (9th Cir. 1998).

3. Claim 3: Battery by a Peace Officer (Deadly Force).

Plaintiff contends that Defendant Ramirez, while acting in the course and scope of his employment as a State of California employee, used unreasonable deadly force against Plaintiff when he repeatedly shot Plaintiff, including to the back, after he dropped the gun, as he fell to the ground, not aggressive, not assaultive, and not an immediate threat of death or serious bodily injury. At all times relevant, Larios was not an immediate threat of death or serious bodily injury, there were reasonable less-intrusive alternatives available, and no warning was given. Under state battery law, an officer may only use deadly force if it was necessary to defend human life. Here it was absolutely not necessary. Here, necessary to defend human life only exists under state law if necessary to defend against an imminent threat of death or serious bodily harm to another. A threat of death or serious bodily

injury is “imminent” when, based on the “totality of the circumstances,” a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. “Totality of the circumstances” includes the conduct of Defendant Ramirez and the involved Officers leading up to the use of deadly force. Defendant Ramirez and the involved Officers’ tactical conduct and decisions before using deadly force must be considered, including whether they used other available resources and techniques as alternatives to deadly force. CACI 1305B (Battery by Peace Officer); Cal. Pen. Code §835a.

“‘[A]n employer’s liability extends to torts of an employee committed within the scope of his employment.’” *John R. v. Oakland Unified School Dist.*, 48 Cal. 3d 438, 447 (1998) (internal citations omitted). The Defendant City of Los Angeles is vicariously liable pursuant to Cal. Gov. Code §§815.2(a); 820(a).

Plaintiff seeks compensatory damages under this claim.

<u>Elements for Battery by a Peace Officer (Deadly Force):</u>

1. Defendant Ramirez intentionally shot Larios; (UNDISPUTED)
2. Defendant Ramirez used deadly force on Larios; (UNDISPUTED)
3. Defendant Ramirez’s use of deadly force was not necessary to defend human life;
4. Larios was harmed; (UNDISPUTED) and
5. Defendant Ramirez’s use of unreasonable force was a substantial factor in causing Larios’s harm.

<u>Source</u>: CACI No. 1305B, (2026 Edition).

4. <u>Claim 4: Negligent Use of Deadly Force by a Peace Officer.</u>

Plaintiff contends that Defendant Ramirez, while acting in the course and scope of his employment with the Defendant City of Los Angeles, was negligent in his pre-shooting tactics and conduct and in using deadly force against Larios. *See Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 635-8 (Cal. 2013). Plaintiff's negligence claim comprehends the Officers' negligent pre-shooting tactics including their failure to have an adequate tactical plan; failure to communicate with Larios properly; failure to communicate with other officers properly; failure to provide a verbal warning; failure to de-escalate the situation; and failure to attempt less intrusive alternatives without unnecessarily escalating the level of force.

Under state negligence law, an officer may only use deadly force if it was necessary to defend human life. Here it was absolutely not necessary. Here, necessary to defend human life only exists under state law if necessary to defend against an imminent threat of death or serious bodily harm to another. Plaintiff contends that Larios did not have present ability, opportunity, or apparent intent to immediately cause death or serious bodily injury and the use of force was also unreasonable because it was based on mere fear of future harm. Further, Defendant Ramirez and the involved Officers' tactical conduct and decisions before using deadly force were negligent, including failing to give a warning, and failing to use available resources and techniques as alternatives to deadly force. CACI 441 (Negligent Use of Deadly Force by Peace Officer); Cal. Pen. Code §835a.

Defendant Ramirez is responsible for all the harm caused to Plaintiff and Larios. The Defendant City of Los Angeles is vicariously liable pursuant to Cal. Gov. Code §§815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.") and 820(a).

Plaintiff seeks compensatory damages under this claim.

<u>Elements for Negligent Use of Deadly Force by a Peace Officer:</u>

1. Defendant Ramirez was a peace officer. (UNDISPUTED)
2. Defendant Ramirez used deadly force on Larios. (UNDISPUTED)
3. Defendant Ramirez use of deadly force was not necessary to defend human life.
4. Larios was harmed. (UNDISPUTED)
5. Defendant Ramirez's use of deadly force was a substantial factor in causing Larios's harm.

Source: CACI No. 441, (2026 Edition).

5. Claim 5: Violation of the Bane Act (Cal. Civ. Code §52.1).

Plaintiff contends that Defendant Ramirez deprived Larios of his constitutional rights when Defendant Ramirez used excessive force. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014) cert. denied sub nom; *City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013); *Bender v. Cnty. of Los Angeles*, 217 Cal. App. 4th 968, 977 (2013); *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009). The Defendant City of Los Angeles is vicariously liable pursuant to Cal. Gov. Code §815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.").

The California Court of Appeals has held that intentional conduct that is separate and independent from an arrest gives rise to a Bane Act claim. *See Simmons v. Superior Court*, 7 Cal.App.5th 1113, 1125-27 (2017). The Ninth Circuit in *Reese v. County of Sacramento*, stated, "it is not necessary for the defendants to have been 'thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" 888 F.3d 1030, 1045 (9th Cir.

2018) (quoting *United States v. Reese*, 2 F. 3d 870 (9th Cir. 1993). Here, there are a number of facts that establish that Defendant Ramirez acted with reckless disregard for Larios's constitutional rights. First, Defendant Ramirez used unreasonable deadly force against Larios, without warning, with reasonable alternative, even after he dropped the gun and while he was falling to the ground and unarmed, having never pointed the gun at anyone, having not verbally threatened anyone, having not harmed anyone, while not about to harm anyone, and when Larios was not even an immediate threat of harm to any person. Defendant Ramirez had time in this encounter to deliberate, plan, analyze, and determine the appropriate level of force, if any.

Plaintiff seeks compensatory damages and statutory attorneys' fees including treble damages or a multiplier under this claim.

<u>Elements of Violation of the Bane Act:</u>

1. Defendant Ramirez acted violently against Larios to prevent him from exercising his right to be free from the use of excessive force.
2. Defendant Ramirez intended to deprive Larios of, or acted with reckless disregard for, his enjoyment of the interests protected by the right to be free from the use of excessive force.
3. Larios was harmed. (UNDISPUTED)
4. The conduct of Defendant Ramirez was a substantial factor in causing Larios's harm.

<u>Source</u>: CACI No. 3066 (2026 Edition) (modified); *Reese*, 888 F.3d at 1042; and modified by this Court's prior approved instructions given at trial.

**B. Plaintiff's Key Evidence to Support Their Claims**

1. Testimony of Esmeralda Larios Alvarado
2. Testimony of Edwin Leano, paramedic
3. Testimony of Victor Aguilar, paramedic

4. Testimony of Dr. Scott Bricker
5. Testimony of Scott Holdaway, Plaintiff's video expert
6. Testimony of Jeff Noble, Plaintiff's police practices expert
7. Testimony of Daniel Ramirez
8. Testimony of David Cervantes
9. Testimony of Rolando Mata
10. Videos of the Incident
11. Screenshots of Videos
12. Photographs of Injuries
13. Relevant portions of Plaintiff's Medical Records
14. Demonstrative Exhibits of Experts

## IV. <u>ANTICIPATED EVIDENTIARY ISSUES</u>:

Plaintiff has filed Motions *in Limine* regarding and anticipates that there will be evidentiary issues related to the following:

A. **Crimes, Wrongs, and Bad Acts**: any criminal history including any contacts with law enforcement, arrests, convictions, custody, incarcerations, probation, parole, allegations of criminal conduct, and any criminal records, gang activity, drug use, threats, or fighting, by Decedent, Plaintiff or any member of their family; any neighborhood violence, gang activity, or other incidents in that area; and any history related to the subject gun including where it is from and whether it was loaded. This information was unknown to Defendant Ramiez, and nevertheless irrelevant to this matter, hearsay, unduly prejudicial, and impermissible character evidence, therefore should be excluded from trial. (Doc. 28.)

B. **Personal History**: any family history including relationship history, residence history, education history, disciplinary history, work history, children's history, social media history, and living arrangements related to Decedent, Plaintiff or any member of their family. All this information was unknown to Defendant

Ramirz, irrelevant to this matter, hearsay, unduly prejudicial, confuses the issues, risks misleading the jury, and includes impermissible character evidence, therefore should be excluded from trial. (Doc. 28.)

C. **After-Acquired Investigatory Information**: Los Angeles Police Department and District Attorney's Office findings and analysis, including whether the force was within policy, whether the force was subject to criminal charges, investigative reports and memos, and press releases; and any after-acquired investigatory records including Los Angeles Police Commission finding, Use of Force Review Board findings, Inspector General findings, Chief of Police findings, and Force Investigation Division findings; any 911 calls and any post-incident interviews with witnesses. This information and records thereof were after-acquired investigatory materials, unknown to Defendant Ramirez, irrelevant to this matter, hearsay, unduly prejudicial, and impermissible character evidence, therefore should be excluded from trial. (Doc. 28.)

D. **Testimony That It Is Permissible to Shoot a Man Merely For Fleeing**: Testimony that it would be appropriate to use deadly force against Larios merely because he had a gun in his hand and was running away, and nothing more – no furtive movement, no verbal threat, no attempt to take a hostage, no pointing of the gun – just running away with a gun in hand yet still an imminent threat of death or serious bodily injury. Any such testimony or argument would be inconsistent with the law, would be inconsistent with the facts, and any such testimony or argument would confuse the jury, mislead the jury, and unduly prejudice Plaintiff. (Doc. 29.)

## V. <u>BIFURCATION OF ISSUES</u>:

Plaintiff does not request any bifurcation and contends that all liability and damages should be tried together with the predicate question of punitive damages and would agree to bifurcate the amount of punitive damages only.

**VI. <u>THE TRIAL IS BY JURY</u>:**

The issues herein are triable to a jury as a matter of right. The parties made a timely demand for trial by jury.

**VII. <u>ATTORNEYS' FEES</u>.**

If Plaintiff prevails at trial, reasonable attorney fees are recoverable pursuant to 42 U.S.C. §1988 and Cal. Code Civ. Proc. §1021.5. Under the provisions of Cal. Civ. Code §52(b), Defendants are also liable for reasonable attorneys' fees and a civil penalty of $25,000 on Plaintiff's Bane Act claim.

**VIII. <u>ABANDONMENT OF ISSUES</u>:**

Plaintiff does not abandon any of his claims.

Respectfully submitted,

DATED: October 14, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Marcel F. Sincich*
Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiff*